498 So.2d 1166 (1986)
Royphy SOILEAU, Jr., Plaintiff-Appellee,
v.
LOUISIANA PAVING COMPANY, INC., et al., Defendants-Appellants.
No. 86-102.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Sutherland and Juge, Denis P. Juge, New Orleans, for defendants-appellants.
Onebane and Assoc., John Wilkes, III, Lafayette, Gilbert Wayne Aucoin, Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, FORET and STOKER, JJ.
DOMENGEAUX, Judge.
The defendant employer has appealed from a judgment which ordered it to pay the plaintiff's expenses for a myelogram and back surgery performed in Texas allegedly for an injury in a work-related accident that occurred in Lafayette Parish on or about September 28, 1984. The defendant's refusal to pay was based primarily on the following sentence of La.R.S. 23:1203(A) of our compensation law regarding the employer's duty to furnish necessary medical and hospital services:
"All such services and treatment shall be performed at facilities within the state when available."
The defendant also contends that it is not liable for these services as they were not previously agreed upon by the parties or *1167 approved by the director or court in accordance with La.R.S. 23:1142.[1]
According to counsel, the office of Workman's Compensation Administration recommended that weekly payments be made for temporary total disability but not the medical expenses incurred outside of the State of Louisiana. After the out-of-state expenses were rejected, this suit was filed.
Counsel stipulated that weekly compensation is being paid currently and the only issue to be tried was the defendant's obligation to pay the out-of-state medical expenses. The district court ruled in favor of the plaintiff, reserving his rights to litigate disability in payment of other medical expenses, but denied the claim for penalties and attorney's fees.
The plaintiff testified that shortly after the accident he was taken by the employer to the emergency room of Lafayette General Hospital where he was x-rayed and released for treatment by Dr. Michael Heard, who is an orthopedic surgeon in Lafayette. This physician prescribed medicine and physical therapy for about two months and then recommended a CAT scan or a myelogram. Why he did not continue with Doctor Heard for further evaluation and treatment does not appear in the record, but plaintiff then went to see Dr. John Tassin, who seemed to have been his regular doctor in Ville Platte. Doctor Tassin referred him to Dr. Steven Snatic, another orthopedic surgeon in Lafayette. A CAT scan of the plaintiff's back and neck was normal, and Doctor Snatic advised the plaintiff to take physical therapy for two more weeks and return to his office as he thought he could then recommend his return to work on light duty. Instead, the plaintiff traveled to Dickinson, Texas, to see Dr. Charles A. Borne, Jr., a neurosurgeon who had performed a back surgery on him in Lake Charles in 1977. Doctor Borne obtained a myelogram on December 4, 1984, which he said showed significant nerve root impingement at L3-4 for which he operated on April 18, 1985. Doctor Borne believed the plaintiff's disability is total at the present time and may be permanent.
The plaintiff was not represented by counsel prior to the operation and dealt with an adjuster, Harvey Hemphill, who was handling the case for the defendant. Hemphill was not informed that the plaintiff was going to see Doctor Borne until after the myelogram was performed and then he and the plaintiff discussed the recommended surgery. Hemphill told him the defendant was not legally responsible for nor would it pay for treatment outside of Louisiana. The plaintiff also testified that Hemphill told him the company would not pay any more medical bills for treatment in Louisiana. However, he admitted on cross-examination that Hemphill said he could go back and see Doctor Snatic and have another myelogram, but he did not do this because of the pain he experienced from the last one.
The plaintiff admitted he knew there were other doctors in Louisiana who could perform the recommended operation. In fact, Dr. John Jackson of Metairie had operated on his back, apparently with success, after the 1977 operation by Doctor Borne because the plaintiff continued to have trouble with his back some time after the surgery. In spite of this, plaintiff said one of his reasons for having the operation in Texas was that he was satisfied with Doctor Borne's prior surgery. Another reason was that in May, 1984, he injured his back while employed by the State of Louisiana at Chicot Park and his medical expenses for treatment by Doctor Borne were paid by the State. He therefore thought that the employer had to pay out-of-state medical expenses in spite of Hemphill having told him to the contrary before the April 18, 1985 surgery.
In a rather similar case, Mary Menard v. Royal Insurance Company, 498 So.2d *1168 1159 (La.App. 3rd Cir.1986), which decision is being rendered this day, we concluded that the employer is not obliged to pay for out-of-state medical expenses when such services are available in Louisiana. We recognized that confidence in one's physician is important and the employee is entitled to choose the physician for treatment of his disabling injury. Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir.1982). However, as the wording of the above quoted statute is clear and unambiguous, the employee's preference for treatment by an out-of-state physician cannot override this explicit law requiring surgery and treatment in this state when available.
As we have stated, the plaintiff admitted there are other capable surgeons practicing in this state, one of which seems to have performed successful corrective surgery on his back after Doctor Borne's operation in 1977. He also admitted that Hemphill told him he could obtain further evaluation and treatment by Doctor Snatic, to whom he was referred by his own physician. So his contention that the defendant refused to pay for any further medical bills is to say the least questionable, as is his contention that he was ignorant of the law quoted above.
Aside from the fact that Hemphill told plaintiff about the law before the April 18, 1985 operation, ignorance of the law is no excuse for noncompliance. La.C.C. Art. 7. Likewise, his justification for the Texas surgery, i.e., that he was unable to obtain an appointment for four or five weeks with a New Orleans doctor to see about having the operation there, lacks merit in view of the fact that some four and one-half months transpired between Doctor Borne's myelogram and the surgery.
Having considered that the employer is not liable under the statute for the out-of-state medical expenses involved herein, it is unnecessary for us to consider the defendant's other contentions regarding Section 1142 of our compensation law.
For the foregoing reasons the judgment of the district court is reversed insofar as it ordered payment of the out-of-state medical expenses sued for and assessed the court costs to the defendant. Otherwise, it is affirmed. The costs of court are assessed to plaintiff-appellee.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] La.R.S. 23:1142 provides as follows:

"Fees for physicians for services, treatment, or testimony under this Chapter shall be reasonable, shall be related to the worker's injury, and shall not be enforceable unless agreed upon by all parties concerned or approved by the director, or, if proceedings are brought under R.S. 23:1311, by the court."