645 So.2d 655 (1994)
Willard Allen BUMGARDEN, Plaintiff-Appellant,
v.
WACKENHUT CORRECTIONS CORPORATION, et al., Defendants-Appellees.
No. 93-1349.
Court of Appeal of Louisiana, Third Circuit.
September 21, 1994.
Rehearing Denied December 14, 1994.
Robert E. Morgan, Lake Charles, for Willard Allen Bumgarden.
Mark Edmond Falcon, Baton Rouge, for Wackenhut Corrections Corp., et al.
Victoria Fontana Suplee, Baton Rouge, for State, DPS.
James Carl Hrdlicka, II, Baton Rouge, for State, Dept. of Justice.
Before DOUCET, LABORDE, YELVERTON, KNOLL and WOODARD, JJ.
KNOLL, Judge.
This appeal concerns the application of the Corrections Administrative Remedy Procedure (ARP), LSA-R.S. 15:1171, et seq., to a private prison facility. Plaintiff, Willard Bumgarden, brought a personal injury suit against defendant, Wackenhut Corrections Corporation (Wackenhut), the contractor operating the private prison facility in which Bumgarden was incarcerated. The trial court dismissed Bumgarden's suit, finding: (1) he failed to exhaust his administrative remedies under the ARP; and (2) the 19th Judicial District Court was the only proper jurisdiction in which to seek review of a decision under the ARP. Bumgarden appeals this ruling.

*656 FACTS
Bumgarden was seriously injured while incarcerated at the Allen Correctional Institute, in Allen Parish, which is operated by Wackenhut. Bumgarden alleges that on June 17, 1991, prison guards ordered him to ride an injured horse, which reared and fell backwards onto him. Bumgarden was released from the institution on October 2, 1991, and filed this suit on April 6, 1992, for injuries sustained in the riding accident. Judgment dismissing Bumgarden's suit on the aforesaid grounds was signed March 10, 1993.
Bumgarden bases his appeal on the contention that the ARP is applicable only to public bodies and not private corporations. However, we believe the dispositive issue is whether the ARP is applicable to the plaintiff since he was not in the physical custody of defendant when he filed his suit.

APPLICATION OF ARP TO PLAINTIFF
The ARP is an administrative grievance procedure designed to resolve inmate complaints within the correctional system. It significantly modifies the conditions under which an inmate may bring actions for personal injuries. The inmate must initiate his administrative action within 30 days of the accident. Furthermore, unless the inmate timely initiates the procedure and exhausts all administrative remedies, he may not seek judicial review of the administrative decision. Louisiana Registry, Vol. 17, No. 1, p. 70, January 20, 1991. However, none of the parties address the threshold question of whether the ARP applies to a plaintiff whose cause of action arose in prison, but who has timely brought suit after being released. Our research indicates the case law in this area to date has only dealt with the filing of suits by inmates who are still in custody. Since this issue is res nova, we base our decision on traditional canons of statutory interpretation. In interpreting the scope of the ARP, we will rely on the literal wording of the statute to the extent such wording does not lead to absurd consequences. LSA-C.C. Art. 9.
Pursuant to 42 U.S.C. § 1997 et seq., the "Civil Rights of Institutionalized Persons Act", the Louisiana legislature enacted LSA-R.S. 15:1171 et seq. These statutes are the enabling legislation for the ARP and provide in part:
1171. Authority
* * * * * *
"B. The department [of Public Safety and Corrections] or sheriff may also adopt, in accordance with the Administrative Procedure Act, administrative remedy procedures for receiving, hearing, and disposing of any and all complaints and grievances by adult or juvenile offenders against the state, the governor, or the department ... which arise while an offender is within the custody or under the supervision of the department ..."
1172. Effect
"A. [T]his procedure shall constitute the administrative remedies available to offenders for the purpose of preserving any cause of action they may claim to have against the state ..."
* * * * * *
"B. No state court shall entertain an offender's grievance or complaint which falls under the purview of the administrative remedy procedure unless and until the offender shall have exhausted the remedies as provided in said procedure. If the offender has failed timely to pursue administrative remedies through this procedure, any petition he files shall be dismissed...."
1174. Definitions
"For purposes of this Part:
* * * * * *
(2) "Offender" means an adult or juvenile offender in the physical custody of the Department of Public Safety and Corrections or a sheriff." (Emphasis added.)
In the literal wording of the statute, the ARP clearly addresses itself to actions brought by "offenders." R.S. 15:1174(2) makes it equally clear that an "offender" is someone who is in the physical custody of the State or a sheriff. To the contrary, Bumgarden had been released from custody at the time he filed this lawsuit. The only way to *657 find the ARP applicable in the case sub judice is to hold that the ARP applies to all causes of action arising while the plaintiff is in custody, regardless of whether the plaintiff is in custody at the time he files suit. However, when the definition of "offender" is read into the statute, it negates this interpretation since the term "offender" is limited to offenders in physical custody. Where section 1171(B) provides the ARP applies to "all complaints and grievances by adult or juvenile offenders against the state," this should be read as applying to complaints and grievances by offenders in custody. Similarly, where section 1172(B) prohibits a court from entertaining an offender's grievance unless the offender has exhausted his administrative remedies, this also should be read as prohibiting petitions by offenders in custody. Not only do we find the literal language of R.S. 15:1171 et seq. compels this result, but also, a review of the history and purpose of the ARP convinces us that any other interpretation would lead to clearly absurd consequences.
While we have found sparse authority defining the purpose and boundaries of R.S. 15:1171 et seq. and the ARP, it is clear the provisions were enacted pursuant to 42 U.S.C. § 1997 et seq., the Civil Rights of Institutionalized Persons Act (CRIPA).
1171. Authority
A. The Department of Public Safety and Corrections and each sheriff is hereby authorized to adopt an administrative remedy procedure at each of its adult and juvenile institutions, in compliance with 42 United States Code 1997, the "Civil Rights of Institutionalized Persons Act", or CRIPA,
..."
By reviewing the congressional history of the Federal statute authorizing States to implement inmate grievance procedures and administrative remedies, we believe some light may be shed on the purpose of Louisiana's ARP.
One of the purposes of the CRIPA was to authorize States to establish inmate grievance procedures, which became the ARP in Louisiana.
"A secondary purpose of H.R. 9400 [CRIPA], one which is strongly endorsed by the States, is an optional provision which will permit the continuance of cases brought in Federal court by State prisoners in order to require exhaustion of certified grievance procedures. This provision will not only help the clogged Federal court dockets, but will free the States of the burden of defending themselves in court against many individual prisoner complaints and will provide prisoners with a speedier, more appropriate forum for the resolution of their complaints." Conf.Rep. 9; 124 Congressional Record 11976.
42 U.S.C. § 1997e authorizes the establishment of grievance procedures and allows courts to require the exhaustion of these procedures. While section 1997e was intended to reduce the number of civil suits, primarily 42 U.S.C. § 1983 actions, filed in Federal courts, the exhaustion requirement was not intended for blanket application. The congressional history indicates the exhaustion of grievance procedures is only required when the procedures have a realistic chance of resolving the dispute.
This section [1997e(e)] provides, in certain cases, for exhaustion of correctional grievance procedures prior to consideration of a prisoner suit in Federal court filed under 42 U.S.C. 1983.
* * * * * *
Subsection (a) [of 1997e(3)] authorizes a Federal court in which an adult prisoner's suit filed under 42 U.S.C. 1983 is pending, to continue that action for a period not to exceed 90 days if the prisoner has access to a grievance resolution system which is in substantial compliance with the minimum standards promulgated pursuant to this section. Such limited continuance would be for the purpose of requiring exhaustion of the approved resolution system. In order to order such a continuance, the court must find it would be "appropriate and in the interest of justice."
It is the intent of the committee that the court not find such a requirement appropriate in those situations in which the action brought pursuant to 42 U.S.C. 1983 raises issues which cannot, in reasonable probability, be resolved by the grievance *658 resolution system, including cases where imminent danger to life is alleged. Allegations unrelated to conditions of confinement... would not appropriately be continued for resolution by the grievance resolution system." 1980 U.S.Code Cong. & Ad.News 787, 816.
We do not believe it was the intent of Congress to require the exhaustion of grievance procedures for all suits filed by inmates. In discussing the above quoted language and the state of Virginia's experience with its grievance procedure, one commentator noted:
According to this view, exhaustion should most appropriately be required in cases involving relatively routine complaints dealing with common incidents of institutional environment. Most section 1983 suits filed by prisoners in the Western District of Virginia fall within this category. Many involve perhaps unpleasant, but not serious, conditions of confinement; isolated incidents of excessive force or inadequate medical attention; property deprivations, both intentional and negligent; violations of religious freedoms; and many other complaints. Logically, then, section 1997(e) should be an effective instrument for keeping routine inmate complaints out of federal court." 7 Am.J. Trial Advoc. 1, 5 (1983). (Footnotes omitted).
To interpret the term "offender" as including former inmates would place such plaintiffs in an untenable position. For instance, under such an interpretation, an inmate injured the day prior to being released would have his rights governed by the ARP. Must such a plaintiff file his complaint in the prison system? Would he even be allowed to since he is no longer an inmate? Has such a plaintiff lost his rights before both the prison administration and the courts? These questions demonstrate the procedural quagmire this court would be blundering into by defining offender to include former inmates.
Obviously, since the ARP envisions review of inmate grievances by the district courts, it was not intended to eliminate an inmate's access to the courts. Rather, the purpose of the grievance procedures is to give "routine inmate complaints" a chance to be resolved at the prison level before turning to the courts. The Federal jurisprudence in this area evidences the reluctance of courts to bar inmate plaintiffs' suits. Federal courts rarely dismiss outright an inmate's suit based solely on the grounds of not exhausting the grievance procedure. Rather, the practice is invariably to continue the case and order the inmate to attempt a solution through the grievance system. Dismissals are then considered when and if the inmate does not follow this order. See Rocky v. Vittorie, 813 F.2d 734 (5th Cir.1987); Lewis v. Meyer, 815 F.2d 43 (7th Cir.1987); Francis v. Marquez, 741 F.2d 1127 (9th Cir.1984); Kennedy v. Herschler, 655 F.2d 210 (10th Cir.1981).
Since the plaintiff in the case sub judice was not incarcerated at the time he filed this suit in State court, denying him access to the courts could not possibly further the purpose of the ARP, i.e., giving the inmate and prison officials a chance to resolve the issue. By applying the ARP to a former inmate, the grievance procedure, instead of a mechanism for reaching out-of-court solutions, becomes a procedural trap for the unwary plaintiff. The congressional history and Federal jurisprudence clearly indicate that this was not the purpose of authorizing States to establish grievance procedures. Where the plaintiff is no longer a prison inmate, applying the ARP to that plaintiff would lead to absurd consequences.

CONCLUSION
We find the definition of the term "offender" clearly places a former inmate no longer in custody outside the scope of the ARP's exhaustion requirement. We hold the ARP does not apply to suits brought by a plaintiff not in custody, regardless of whether the cause of action arose while the plaintiff was in custody.
For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded to the district court for further proceedings.
REVERSED AND REMANDED.
DOUCET and WOODARD, JJ., dissent and assign reasons.
*659 DOUCET, Judge, dissenting.
I respectfully dissent from the majority opinion herein. The language of La.R.S. 15:1171, et seq., is clear and has been correctly cited by the majority. In order to reach its conclusion the majority has found that the plaintiff was not an offender under the statute because he was not incarcerated when he brought the suit. This interpretation ignores the fact that during the entire time period set by that statute for institution and completion of the administrative procedures, the plaintiff remained incarcerated. When the statute is read as a whole it is clear that the plaintiff is an offender as defined therein.
La.C.C. art. 9 states that:
"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
The majority in this case has concluded that to require the plaintiff to comply with La.R.S. 15:1171, et seq., would lead to absurd consequences since his incarceration ended prior to the filing of suit. I cannot agree that an absurd consequence would be reached by applying the statute as written. The plaintiff was incarcerated during the entire period required for the institution and completion of the administrative procedure provided for by the statute. He failed to begin that procedure as outlined in the statute. Now having been released he seeks to bypass the procedure provided by the legislature. The statute by its language applies to all causes of action arising while a plaintiff is incarcerated and should be applied in this case. If this was not the intent of the legislature in enacting this statute, it is the job of the legislature, not that of the courts, to change the law.
Plaintiff further argues that the statute is unconstitutional as it conflicts with his right to free access to the courts as guaranteed by La. Const. Art. I, sec. 22. I disagree. The right to access to the courts in civil matters is subject to the legislature's authority to regulate that access and to prescribe reasonable rules governing the procedure by which the right to access may be exercised. Crier v. Whitecloud, 496 So.2d 305 (La.1986); Nelson v. Northshore Shell Service, 525 So.2d 692 (La.App. 1st Cir.1988); Something Irish Co. v. Rack, 333 So.2d 773 (La.App. 1st Cir. 1976). La.R.S. 15:1171, et seq., is an appropriate exercise of the legislature's regulatory authority. Accordingly, I would affirm the trial court's judgment.
WOODARD, Judge, dissenting.
The majority concludes that the Administrative Remedy Procedure ("ARP") is not applicable to the appellant because he was not incarcerated when he filed suit, and therefore that he does not fall within the definition of "offender," to which category of persons the ARP exclusively applies. I respectfully disagree with the majority's interpretation of the statute. I believe that this reasoning violates the cardinal rule of statutory interpretation, that "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.C.C. art. 9; Gooden v. Police Jury of Lincoln Parish, 48 So. 196 (La.1909).
The ARP is applicable to "all complaints and grievances by adult or juvenile offenders against the state, the governor, or the department... which arise while an offender is within the custody or under the supervision of the department." La.R.S. § 15:1171(B). An offender is defined as "an adult or juvenile offender in the physical custody of the Department of Public Safety and Corrections or a sheriff." La.R.S. § 15:1174(2). Nowhere does any provision of the statute indicate that an offender ceases to be an offender as defined by section 1174 after discharge, nor that an offender must be in custody at the time of filing to be bound by the ARP. In fact, the ARP provides the procedure through which an offender may file suit for a claim that arose during incarceration, even if he has already been discharged. ARP § M. Read together, these sections unequivocally indicate that the ARP attaches to all grievances brought for injuries incurred during incarceration. This *660 court is bound to abide by the statute clearly written thus by the legislature.
Even if the definition of offender does not include appellant, however, his cause of action was extinguished by his failure to commence administrative proceedings within the 30 days prescribed by the ARP. Those 30 days expired while appellant was still a prisoner, when his claim was clearly governed by the ARP. A statute of limitations is a legislative determination that no cause of action can arise after a certain period of time. Crier v. Whitecloud, 496 So.2d 305, 310 (La. 1986). Even the enactment of a new liberative prescription statute cannot revive a prescribed cause of action, Hall v. Hall, 516 So.2d 119, 120 (La.1987), so it seems unlikely that the offender's self-declared change of forum could do so.
Further, the First Circuit has determined that the delay provided in the ARP within which an offender must appeal a decision of the DPSC to the district court is peremptive, rather than prescriptive. Carter v. Lynn, 637 So.2d 690, 691 (La.App. 1st Cir.1994). The delay within which an offender must file suit is also peremptive, because, as in Carter, the delay period is contained in the statute creating the right to sue, and provides a certain amount of time in which the right to file suit must be exercised. Peremption may not be interrupted or suspended, La.C.C. art. 3461, and appellant's right to relief ceased to exist once the peremptive period expired. Carter, 637 So.2d at 691.
The majority's interpretation would result in the appellant's claim suddenly springing back into existence after it was extinguished by appellant's failure to file suit as an inmate within the 30-day delay provided. This ungainly result is demanded by neither the law nor fairness. It would seem a strange result if the appellant were capable of determining whether the courts or the DPSC possess subject matter jurisdiction over his claim simply by deciding when to file. If forum shopping by ordinary citizens is to be discouraged as contrary to public policy, see Ferens v. John Deere Co., 494 U.S. 516, 526-27, 110 S.Ct. 1274, 1281-82, 108 L.Ed.2d 443 (1990), permitting an ex-convict to determine whether the judicial or the administrative law system will hear his tort claim against the state would seem to be an even less desirable result.
I also disagree with the majority's characterization of requiring a released offender to exhaust his administrative remedies through the prison system as absurd. The ARP provides swift and efficient review of the large number of inmate complaints or lawsuits brought against the state each year. This review is conducted initially by the agency responsible for the inmates, which is the body that is most likely to be able to address valid complaints and to screen out groundless charges before they reach the courts. Requiring offenders to exhaust their administrative remedies before suing fulfills the purposes of providing prisoners (and ex-prisoners) with a speedy, appropriate forum for the resolution of their claims, and of reducing the number of lawsuits that reach trial. Conf. Rep. 9; 124 Cong.Rec. 11976. Our taste or distaste for such a requirement is irrelevant because the courts are not permitted to substitute their judgment for that of the legislature.
Further, I disagree with the majority's description of this requirement as a procedural trap for the unwary inmate, because all inmates are made aware of the procedure when they are incarcerated. The DPSC distributes literature to incoming prisoners describing the procedure that they must follow to obtain relief for their complaints. Indeed, the ubiquity of "jailhouse lawyers" and the existence of prison law libraries render it likely that the average prisoner is more aware of his remedies than the average layperson, who is expected to know the law. Additionally, "it is not and has never been the law that one must receive notice of a law before it can affect him." West v. State, 356 So.2d 1015, 1016 (La.App. 1 Cir.1977). While an ordinary debtor may not be chargeable with knowledge of an obscure, counter-intuitive federal banking regulation, Jefferson Bank & Trust Co. v. Stamatiou, 384 So.2d 388, 391 (La.1980), ignorance of the law is not an excuse for noncompliance, Soileau v. La. Paving Co., Inc., 498 So.2d 1166, 1168 (La. App. 3 Cir.1986). No one may avail himself of ignorance of the law. La.C.C. art. 5.
*661 The majority incorrectly views requiring released offenders to follow the ARP as placing them in the untenable position of being unable to sue in the courts as a normal citizen and unable to pursue the administrative process available to incarcerated offenders. Felons are not "normal citizens," and by virtue of their choice to set themselves apart from the rest of society, it is to be expected that they will lose some of their "rights" or at least have them limited. Hill v. Estelle, 537 F.2d 214, 215 (5th Cir.1976). Further, the ARP provides for completion of review of complaints submitted by offenders who are subsequently discharged, ARP § M, so requiring a released offender to exhaust his administrative remedies prior to filing suit would not strip him of his claim.
Finally, by way of comparison, no action lies for a serviceman's injury incident to military service, whether he files suit before or after his discharge. Feres v. U.S., 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Gaspard v. U.S., 713 F.2d 1097, 1100 (5th Cir. 1983). Convicts, on the other hand, enjoy the right to sue for personal injuries, provided only that they follow the rules prescribed for institution of proceedings. Mr. Bumgarden is incarcerated because he chose not to abide by the laws that society has determined are necessary to the maintenance of the social fabric in good condition. By ignoring the administrative process erected to deal with complaints such as his, he has revealed his continuing unwillingness to follow the rules of society. By virtue of the majority's decision, we are not only enlarging convicts' "rights" while we accord none to military personnel, who are law-abiding citizens, but we are also rewarding this convict for again ignoring the rules.
In construing CRIPA and its legislative history, the majority implies that Congress intended to preclude states from requiring exhaustion in all cases. The majority mistakes the absence of language in CRIPA requiring exhaustion as evidence that Congress intended to provide relief from the exhaustion requirement in certain instances, such as the case sub judice. CRIPA is merely an enabling statute that permits the states to enact procedures regulating prisoner lawsuits. See 42 U.S.C. § 1997e. The details are left to each state to decide, and the absence of language mandating exhaustion in all cases is therefore irrelevant to the propriety of the decision by our Legislature to enact such a requirement.
Finding no manifest error, I would affirm the judgment of the trial court dismissing Mr. Bumgarden's claim.