647 So.2d 1237 (1994)
Kevin BELLARD, Plaintiff-Appellant,
v.
LOUISIANA CORRECTIONAL AND INDUSTRIAL SCHOOL, State of Louisiana, and Steve Rader, Defendants-Appellees.
No. 93-545.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1994.
*1238 Stacey Williams Moreau, Eric Miller, Lake Charles, for Kevin Bellard.
Michael Glenn Hodgkins, Lake Charles, for Louisiana Correctional & Indus. School, et al.
Before KNOLL, SAUNDERS, COOKS, WOODARD, and DECUIR, JJ.
WOODARD, Judge.
This is an appeal from a judgment dismissing an inmate's personal injury claim against the State for failure to comply with the prescribed administrative procedures.

FACTS
Kevin Bellard injured his leg on March 20, 1992, while he was an inmate at the Louisiana Correctional School. He filed suit against the School, its warden, and the State on April 15, 1992, on the grounds that they had negligently failed to protect him from injury. The defendants responded with exceptions of no cause of action and abandonment, arguing that Bellard was barred from instituting judicial proceedings against them without first exhausting his administrative remedies, and that he had abandoned his claim by failing to do so in a timely manner. The district court granted the defendants' exceptions and dismissed Bellard's lawsuit with prejudice. Bellard now appeals, asserting that he was not required to pursue any administrative remedies prior to filing suit.

LAW
The Department of Public Safety and Corrections (DPSC) promulgated the Corrections Administrative Remedy Procedure (ARP) pursuant to federal and state statutes authorizing the implementation of an exclusive administrative remedy for inmate complaints against the State. 42 U.S.C. § 1997 et seq.; La.R.S. § 15:1171 et seq. An inmate must exhaust his administrative remedies under the ARP prior to instituting *1239 judicial proceedings. See Daily Advertiser v. Trans-La, Etc., 612 So.2d 7, 27 (La.1993). Administrative review under ARP must be initiated within 30 days of the event of which the inmate is complaining. ARP, § G.
Bellard was given a manual describing the ARP when he was admitted into prison in May 1991. He was given the 1986 edition, however, which had been issued prior to a 1989 amendment to La.R.S. § 15:1171 explicitly providing the DPSC with authority to award monetary damages for personal injury claims. Prior to the amendment, an inmate seeking such relief was not required to pursue administrative remedies before filing suit, because the DPSC did not possess authority to grant monetary relief. Mack v. State, 529 So.2d 446, 448 (La.App. 1 Cir.), writ denied, 533 So.2d 359 (La.1988). The ARP was revised in 1990 to reflect the DPSC's additional authority.
Bellard argues that the new ARP was not properly implemented at the time of his injury, and thus was not in effect, because it was not distributed to the inmates. He also argues that his lack of notice of the revised ARP renders its application to him impermissible. Instead, according to Bellard, he remains subject to the 1986 version, under which he was not required to exhaust his administrative remedies prior to instituting judicial proceedings.
Initially, we note a recent, seemingly similar case, Bumgarden v. Wackenhut Corrections Corp., et al., 645 So.2d 655 (La.App. 3 Cir.1994),[1] decided by this circuit. The issues, however, were different. The dispute in Bumgarden involved the threshold issue of whether the ARP applies to a plaintiff whose cause of action arises when he is imprisoned, but who is subsequently released and brings suit within the statutory period afforded unincarcerated persons. Id. We did not reach the issues of whether the ARP was properly implemented or whether it may be applied to plaintiffs who were incarcerated when they filed suit. Thus, Bumgarden does not apply to the case sub judice.

I. IMPLEMENTATION
An administrative rule, such as the ARP, becomes effective upon publication in the Louisiana Register, subsequent to adoption by the promulgating agency. La.R.S. § 49:954. Additionally, with respect to the ARP, the DPSC was required to obtain the approval of a federal court. La.R.S. § 15:1172(A). The revised ARP was approved by federal district judge Frank Polozola on August 17, 1990, and published in the Louisiana Register on January 20, 1991. Thus, the revised ARP became effective on January 20, 1991 without further action on the part of the DPSC.
The ARP itself provides that "new employees and incoming offenders must be made aware of the system in writing and by oral explanation." ARP, § E(3). However, as noted by the district court, the procedure for redress of grievances did not change when the rules were changed; the only difference was that damages for personal injury were explicitly provided. Thus, the inmates were made aware of the system. We therefore hold that the DPSC implemented the revised ARP properly.

II. NOTICE
The manual given to Bellard clearly states that inmates have 30 days to request the Warden to provide a solution to any concern they may have, and that "offenders may request administrative remedies for situations arising from policies, conditions, or events within the institution that affect them personally." This procedure is called a "grievance procedure," where a "grievance" is defined as "a written complaint by an offender on the offender's own behalf regarding ... an incident occurring within an institution." The manual also states that "Inmates are required to use the procedure before they can proceed with a suit in Federal and State Courts."
It is difficult to believe Bellard's argument that this language did not provide him with notice that he should seek satisfaction initially from the DPSC. He had previously instituted administrative review of other complaints, *1240 and he clearly understood the system. Further, even if he did not understand the rules, the manual would have prompted a reasonable inmate to inquire as to how to proceed. His position is greatly weakened because he was represented by counsel at the time he filed suit, when the 30-day period for initiation of administrative procedures had not yet expired. See Beazor-Williams v. St. Paul Fire & Marine Ins. Co., 598 So.2d 1249, 1250 (La.App. 4 Cir.1992). Finally, as noted above, the procedure for redress of grievances did not change when the rules were changed to authorize monetary relief. Thus, Bellard's claim that the old manual misled him as to how to proceed is without merit.
Moreover, even if the 1986 manual did not provide Bellard with sufficient notice of the course of action he was required to pursue, his lack of knowledge is of no consequence. Prescription does not run against one who is ignorant of his rights, provided that the party pleading prescription has engaged in activity that contributes to the plaintiff's want of knowledge. Martin v. Mud Supply Co., 239 La. 616, 119 So.2d 484, 492 (1960). However, mere ignorance of one's rights will not toll prescription or peremption. Id. "It is not and has never been the law that one must receive notice of a law before it can affect him." West v. State, 356 So.2d 1015, 1016 (La.App. 1 Cir.1977). Ignorance of the law is no excuse for noncompliance. La.C.C. art. 5; Soileau v. La. Paving Co., Inc., 498 So.2d 1166, 1168 (La.App. 3 Cir.1986).
It does not appear that the DPSC tricked Bellard into filing his claim in state court rather than with the DPSC, or that Bellard was precluded from investigating the current regulations affecting his claim. Bellard was made aware of the system when he was incarcerated, regardless of whether the exact nature of the remedies available was made clear to him. There is no reason, therefore, to depart from the established rule that ignorance of the law is no excuse for noncompliance.

III. DISMISSAL WITH PREJUDICE
Section 1172 does not discuss whether dismissal for failure to comply with the ARP should be with or without prejudice. Peremptory exceptions properly lead to dismissal with prejudice, however, because they are granted when suit for the relevant claim can not be brought. See Ubosi v. Sowela Technical Institute, 584 So.2d 340, 342 (La. App. 3 Cir.), writ denied, 589 So.2d 1075 (La.1991). A peremptory exception of no cause of action is used to determine whether the law affords plaintiff any remedy under the allegations of his petition. Weber v. State, 635 So.2d 188, 191 (La.1994). The State's peremptory exception of no cause of action was properly granted because the law no longer affords Bellard any remedy for his injury, as a result of the expiration of the 30-day limitation period. Bellard's claim is therefore ended and incapable of revival through amendment. See Day v. Day, 563 So.2d 441, 443-44 (La.App. 1 Cir.), writ denied, 567 So.2d 109 (La.1990). Consequently, his suit was properly dismissed with prejudice.

CONCLUSION
For the foregoing reasons, we affirm the decision of the trial court in favor of the appellees. Costs of this appeal are assessed against appellant.
AFFIRMED.
KNOLL, J., concurs with reasons.
SAUNDERS, J., dissents.
COOKS, J., dissents with reasons.
KNOLL, Judge, concurring.
I agree in all respects with the majority's view, with the exception that it is in conflict with the majority's views expressed in Bumgarden v. Wackenhut Corrections Corp., et al, 93-1349 (La.App. 3d Cir. 9/21/94), 645 So.2d 655. I authored the Bumgarden majority opinion. Simply stated, in my view, the ARP does not apply to a suit brought by a plaintiff not in custody, regardless of whether the cause of action arose while the plaintiff was in custody.
*1241 COOKS, Judge, dissenting.
I differ with the majority's conclusion that Bellard's claim was properly dismissed with prejudice. A litigant wishing to institute a personal injury suit must do so within one year as prescribed by LSA-C.C. Art. 3492. Bellard's suit was filed and served within this statutory period, albeit prematurely filed in the wrong venue or before an incompetent court. Ordinarily, under these circumstances, failure to first seek administrative relief would not warrant dismissal of his tort action with prejudice. Filing suit would start the prescriptive period anew. See LSA-C.C. Art. 3462. In effect, a judgment dismissing Bellard's suit would only delay his right to judicially pursue the action. However, the majority concludes Bellard's status as a prisoner required him to file a claim within thirty days after each alleged occurrence; and, his failure to do so bars him forever from pursuing the claims (judicially and administratively) because his action is deemed abandoned. I do not believe this harsh result is compelled by the inmate administrative procedures provisions adopted by the Louisiana Legislature. The Legislature did not modify the codal prescription provision generally applicable to tort claims by shortening the delay period for filing institutional tort action. Furthermore, the Legislature did not expressly grant such authority to the Department when it empowered the Department of Public Safety and Corrections to adopt administrative procedures in compliance with the "Civil Rights of Institutionalized Persons Act" (CRIPA) and certain federal regulations.
The majority reasons the defendant's peremptory exception of no cause of action was properly granted because Bellard's right to seek relief was terminated when the 30-day period expired. However, I am not convinced this rigid exhaustion rule should apply to prisoners' tort suits that arise incident to their incarceration.[1]
The doctrine of exhaustion was crafted to accommodate the interest of allowing an administrative agency first opportunity to resolve disputes stemming from the program or activities it administers before appearing in court to answer suit. As a corollary benefit, the doctrine may serve to promote judicial efficiency in two ways: First, a judicial confrontation may be avoided because the agency retains authority to correct its own error; and, second, even where a controversy survives after administrative review, requiring a litigant to exhaust administrative procedures may produce a useful record for subsequent judicial consideration. See McCarthy v. Madigan, 503 U.S. 140, ___ _ ___, 112 S.Ct. 1081, 1086-87, 117 L.Ed.2d 291 (1992); Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975).
The doctrine of exhaustion has been legislatively adopted in this state; but, its application has been limited to certain claims, e.g., employment disputes involving classified civil servants or public school workers. A "no exhaustion rule" has been applied uniformly in tort actions, except in medical malpractice cases where litigants are required to first file their claims with a medical review panel before resorting to the courts. Even when a litigant fails to exhaust the statutorily implemented procedures before filing suit, this omission does not bar him from later filing suit if his claim is first submitted to a medical review panel as required. The suit, though prematurely filed, suffices to interrupt the running of prescription and start it anew.
I do not believe Congress intended to grant this State authority to burden prisoners with exhaustion requirements which in the end serves no useful purpose but to thwart their right to pursue tort claims. Neither the express intent of Congress nor the history of CRIPA suggests this court should hurriedly stamp such requirements with judicial approval. In McCarthy, supra, the United States Supreme Court stated when determining whether exhaustion is required *1242 before an inmate may judicially litigate his claim, "federal courts [have balanced] the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." McCarthy, 503 U.S. at___, 112 S.Ct. at 1087. The application of this balancing principle, the Supreme Court teaches, is "intensely practical ... because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." Id. at ___, 112 S.Ct. at 1087.
There are occasions, the Court cautioned, when the interests of the inmate may weigh heavily against requiring administrative exhaustion. This is particularly so where requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action or the administrative remedy may be inadequate "because of some doubt as to whether the agency was empowered to grant effective relief ...; [or] the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy, 503 U.S. at___, 112 S.Ct. at 1080.
The Supreme Court held in McCarthy exhaustion by a federal prisoner was not required where the administrative procedures in effect did not afford him a monetary remedy. It also held "rapid filing deadlines counsel strongly against exhaustion as a prerequisite to the filing of a federal court action," noting:
"The filing deadlines for the grievance procedure require an inmate, within 15 days of the precipitating incident, not only to attempt to resolve his grievance informally but also to file a formal written complaint with the prison warden. 28 C.F.R. § 542.13. Then, he must successively hurdle 20-day and 30-day deadlines to advance to the end of the grievance process. § 542.15. Other than the Bureau's general and quite proper interest in having early notice of any claim, we have not been apprised of any urgency or exigency justifying this timetable. As a practical matter, the filing deadlines, of course, may pose little difficulty for the knowledgeable inmate accustomed to grievances and court actions. But they are a likely trap for the inexperienced and unwary inmate, ordinarily indigent and unrepresented by counsel, with a substantial claim.
Respondents argue that the deadlines are not jurisdictional and may be extended for any `valid' reason. Yet the regulations do not elaborate upon what a `valid' reason is. Moreover, it appears that prison officials perhaps the very officials subject to suit are charged with determining what is a `valid' reason.
All in all, these deadlines require a good deal of an inmate at the peril of forfeiting his claim for money damages. The `first' of `the principles that necessarily frame our analysis of prisoners' constitutional claims' is that `federal courts must take cognizant of the valid constitutional claims of prison inmates.' Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Because a prisoner ordinarily is divested of the privilege to vote, the right to file a court action might be said to be his remaining most "`fundamental political right, because preservative of all rights.'" Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886) ..." McCarthy, 503 U.S. at ___ _ ___, 112 S.Ct. at 1090-91 (citations omitted).
The administrative filing deadlines adopted by Louisiana's Department of Public Safety and Corrections are just as rapid as those questioned in McCarthy and even more burdensome in several respects. First, an inmate must address a letter to the unit head within 30 days of the alleged event in which he briefly set out the basis for his claim and the relief sought. This deadline "may be waived where circumstances warrant: If the offender was ill and unable to write, etc." The Department, however, retains sole authority to determine what constitutes valid reasons "etc." to warrant extending the filing deadline. Second, the letter must contain the phrase "This is a request for administrative remedy." Absent this phrase, the letter will not suffice to interrupt the 30 day delay period. Third, if the inmate is not satisfied with the response he receives after the first step, he must complete the second section of *1243 Form ARP-1 and deliver it to the unit head within five days. If the inmate is not satisfied with the response he receives after the second step, he may lodge an appeal with the Secretary of the Department of Public Safety and Corrections. He must "attach all appropriate documents and responses from step one and two reviewers and mail the package directly to: Supervisor, Internal Affairs Section, P.O. Box 94304, Baton Rouge, Louisiana XXXXX-XXXX, postmarked within five days of the date of the second step response." Fourth, if the inmate is not satisfied with the third step response, he must seek judicial review of the decision within 30 days after receiving the third response.
If an inmate does not complete each step within the delays specified, unlike CRIPA the Department urges, Louisiana's Administrative Remedy Procedures Act does not allow state courts to maintain an inmate's suit while ordering him to exhaust the prison's administrative remedy within a court ordered period. The state court, according to the Department, must dismiss the action; and, the inmate's claim is deemed abandoned. This is so, the Department intimates, even if the codal deadline for filing tort claims has not expired.
In practice, a state prisoner who elects to file suit in federal court will not suffer automatic dismissal of his claim for failure to timely exhaust the Department's administrative procedures. But, the same inmate who elects to lodge his claim in state court without first exhausting such procedures abandons all hope of maintaining it. I do not believe this result was envisioned by Congress when it granted states authority to administratively attempt resolution of inmate complaints. It is hard to fathom why Congress would bequeath to states the power to impose an exhaustion rule which in application diminishes the state courts' authority to entertain state prisoners' claims while expressly granting federal courts full authority to maintain them.
Further, it will not undermine Congress' secondary purpose for enacting CRIPA if state courts possess dual authority to maintain a state prisoner's action while requiring him to first seek administrative relief. Still, the agency may avoid ultimately defending itself by satisfying the prisoner's claim; and the state court, thereby, will be free to remove it from the docket.
I also question whether the Louisiana Legislature possessed state governmental authority to bequeath the Department power to so restrict a prisoner's constitutional right to court access as provided by La. Const. Article I, § 22 which provides:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."
In Crier v. Whitecloud, 496 So.2d 305 (La. 1986), the Louisiana Supreme Court said the right to recover in tort is not a fundamental constitutional right; nevertheless, there must exist a rational basis to restrict a litigant's access to the courts. See also Everett v. Goldman, 359 So.2d 1256 (La.1978). The Department has not articulated any reason for demanding that a prisoner file his claim within 30 days of the incident or forfeit it forever. Other than perhaps its desire to know quickly what claims may exist against it, I am ill prepared to supply a second reason to support the Department's adoption of such a rapid and final initiation deadline. Also, the Department's procedures do not promote judicial efficiency by providing a record for review. Any record obtained or investigative reports prepared during the administrative phase are not discoverable; and, they are inadmissible in a court of law.[2] The Department's notification interest when balanced against a prisoner's right to court access does not tip the rational basis scale in its favor.
*1244 When all is read and scrutinized, I simply do not believe the State Legislature intended to grant the Department authority to enact such burdensome filing deadlines. While delegating authority to the Department to enact administrative procedures, the Legislature specifically stated the procedures must comply with CRIPA and Part 40 of Title 28, Code of Federal Regulations. CRIPA does not strip authority from state courts to maintain prisoners suits if they fail to exhaust administrative procedures. It also does not compel exhaustion in all cases. CRIPA's enactment was not spawned by any desire to prevent inmates from ultimately asserting tort claims before a court of law. Further, other applicable federal regulations clearly provide the procedures for initiating complaints shall be simple and "shall not demand unnecessary technical compliance with formal structure or detail." 28 C.F.R. § 40.7 (1993).
As noted, the state legislature authorized the Department to implement administrative procedures to handle inmate claims consistent with the authority it derived from Congress through the enactment of CRIPA. While Congress did not expressly prohibit states from adopting stricter exhaustion requirements than recited in CRIPA, it did not expressly grant them authority to do so. I believe Congress' silence does not imply it authorized states to enact rapid filing deadlines applicable only to prisoners' tort suits which restrict their access to state court. The state's interest in having first opportunity to resolve an inmate's complaint without defending itself in court is not defeated by permitting state courts to maintain an inmate's tort action while insisting that he seek administrative relief before proceeding with litigation. On the contrary, both the state's legitimate interest and the prisoner's right to court access thrives.
For the reasons expressed above, I respectfully dissent from the majority's conclusion that Bellard's suit was properly dismissed with prejudice.
NOTES
[1] The author of this opinion dissented from the majority opinion in Bumgarden.
[1] Once the right to recover in tort for a particular injury is legislatively granted; it must be afforded equally to all persons who sustain such injury. Bellard has not argued, in brief, that the deadlines adopted by the Department denies him the right to equally assert a personal injury claim statutorily recognized solely because of his inmate status. Therefore, we are not called to address whether the administrative procedures established by the Department violate the equal protection clauses of the federal and state constitutions.
[2] The Department's Administrative Procedures, Section K(2), provides "All reports, investigation, etc., other than the offender's original letter and Forms ARP-1 through 4, are prepared in anticipation of litigation, and are prepared to become part of the attorney's work product for the attorney handling the anticipated eventual litigation of this matter and are therefore confidential and not subject to discovery."