754 So.2d 1119 (2000)
Marty L. KING
v.
STATE of Louisiana Through the LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS and Prison Enterprises.
No. 98 CA 2910.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*1121 John G. Munoz, New Orleans, John B. Comish, Baton Rouge, for Plaintiff/Appellant, Marty L. King.
Suzanne E. Quinland, Assistant Attorney General, Baton Rouge, for Defendant/Appellee, State of Louisiana, et al.
Before: CARTER, LeBLANC, and PETTIGREW, JJ.
CARTER, J.
This is an appeal from a former inmate alleging his lawsuit was improperly dismissed as being barred by the Corrections Administrative Remedy Procedures Act (ARP), LSA-R.S. 15:1171 et seq., because it was filed more than 30 days after he received notice of the final administrative decision.

FACTS
Marty King alleged he was injured in an accident which occurred on May 24, 1995, while he was an inmate at Dixon Correctional Institute. King timely instituted a claim conforming to the requirements of the ARP. King continued to follow the ARP process until he received notice that his "Third Step" appeal had been denied on December 21, 1995. However, King had been previously released from Dixon on June 30, 1995.
On May 13, 1996, King filed a lawsuit seeking damages for his personal injuries in the 19th Judicial District Court for East Baton Rouge Parish. In response to King's suit, the Department of Corrections filed a peremptory exception of failure to timely seek judicial review pursuant to LSA-R.S. 15:1177A. The Commissioner found that the ARP was applicable to King and his lawsuit was therefore untimely since he failed to timely complete the final step in the ARP because his lawsuit had been filed more than 30 days after receipt of the "Third Step Response." In accordance with the Commissioner's recommendations, the trial judge signed a judgment maintaining the Department of Correction's exception, and dismissing King's suit at his cost. King appeals the judgment of the trial court.

DISCUSSION
The ARP is an administrative grievance procedure designed to resolve inmate complaints within the correctional system. It significantly modifies the conditions under which an inmate may bring actions for personal injuries. Bumgarden v. Wackenhut Corrections Corp., 93-1349, p.2 (La. App. 3rd Cir.9/21/94), 645 So.2d 655, 656, writ denied, 95-0156 (La.6/2/95), 654 So.2d 1102. The ARP indicates that it "shall constitute the administrative remedies available to offenders for the purpose of preserving any cause of action they may claim to have against the state." LSA-R.S. 15:1172A. The issue in the present case is whether the ARP governs King's claim since he was released from custody.
At the time of King's accident, the ARP defined "offender" as "an adult or juvenile offender in the physical custody of the Department of Public Safety and Corrections or a sheriff." LSA-R.S. 15:1174(2). Under this definition, the courts found that claims of inmates who had been released from custody were not governed by the ARP. Thus, the ARP could not bar former inmates from presenting otherwise timely claims. See Bumgarden, 645 So.2d at 658; Green v. State, 96-0781, p.4 (La.App. 1st Cir.5/9/97), 693 So.2d 1317, 1318, writ not considered, 97-1563 (La.10/3/97), 701 So.2d 189.
However, in 1997, Bumgarden and Green were legislatively overruled by La. Acts 1997, No. 575, § 1, which amended and rewrote LSA-R.S. 15:1174 to add to the definition of "offender" the following language, "Any subsequent event, including *1122 posttrial judicial action or release from custody, shall not effect status as an `offender' for the purposes of this part."[1] Accordingly, an inmate who is no longer in the physical custody of the state must still abide by the requirements of the ARP to present his claim.
The Department of Corrections argues that the 1997 amendments to the ARP should be applied retroactively. Retroactive application of these amendments would place King's complaint within the scope of the ARP. Generally, there is a rule against retroactive application of legislative enactments. See LSA-C.C. art. 6, LSA-R.S. 1:2. In order to determine whether a legislative enactment is to be applied retroactively or prospectively, the court must ascertain whether in the enactment the legislature expressed its intent regarding retroactive or prospective application. Genusa v. Dominique, 97-0047, p.9 (La.App. 1st Cir.2/20/98), 708 So.2d 784, 790.
The 1997 amendments to the ARP do not provide for a specific effective date, nor did the legislature address its intent regarding the retroactive or prospective application of the amendment. As a result, pursuant to LSA-Const. art. 3, § 19, the general effective date of all laws enacted at the 1997 regular session was August 15, 1997. Thus, the issue becomes whether the 1997 amendments to the ARP are substantive, procedural, or interpretative.
A substantive law has been defined as that which creates, confers, defines, destroys, or otherwise regulates rights, liabilities, causes of action, or legal duties. Stated another way, substantive laws either establish new rules, rights, and duties or change existing ones. Genusa, 708 So.2d at 790.
Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or operation of the laws. In other words, procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status. Curative acts are those that remove past disabilities in order to effect the true intent of the legislature. Genusa, 708 So.2d at 790-91.
Interpretive laws, on the other hand, merely establish the meaning the statute had from the time of its enactment. It is the original statute, not the interpretive one, which establishes the rights and duties. When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may then be given retroactive effect because it does not change pre-existing law, it merely clarifies it. Interpretive laws change existing standards by redefining and returning to their original meaning, providing the legislature with the opportunity to pronounce the correct interpretation to be given to existing laws. Legislation, however, which changes settled existing law falls outside the category of interpretive legislation. Genusa, 708 So.2d at 791.
We note the 1997 amendments to the ARP redefined who was considered an "offender" for purposes of the application of the ARP to their claims in that physical custody was no longer the sole determinative factor. Accordingly, the definition was changed so that the ARP would be utilized for a claim as long as the claim arose while the claimant was in custody of the Department of Corrections or a sheriff. This amendment establishes a new rule for determining whose claims are governed by the ARP and must be considered a substantive change. Substantive changes are applied prospectively only. LSA-C.C. art. 6; LSA-R.S. 1:2.
*1123 Because the 1997 amendments to the ARP are applied prospectively, King's status as an "offender" is governed by the ARP's definition of "offender" at the time of his accident. The prior interpretation of the definition of "offender" did not mandate inmates who were no longer in the physical custody of the state to utilize the ARP to present their claims. Bumgarden, 645 So.2d at 658. Thus, King was not bound to file his petition for judicial review within 30 days of receiving notice that his "Third Step" appeal had been denied. Rather, King had one year from the date of his injury, May 24, 1995, to file his claim for damages. LSA-C.C. art. 3492. Accordingly, King's petition filed on May 13, 1996, is not barred by the peremptive period of ARP.

CONCLUSION
Based on the foregoing, we find that King's petition for damages was timely filed. The decision of the trial court is reversed, with the Department of Corrections to bear all costs of this appeal in the amount of $725.66. This matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] La. Acts 1997, No. 575, § 1 also added Subsection D to LSA-R.S. 15:1171, which provides:

D. For the purposes of this Part, status as an "offender" is determined as of the time the basis for a complaint or grievance arises. Subsequent events, including posttrial judicial action or release from custody shall not effect status as an "offender" for the purposes of this Part.