708 So.2d 784 (1998)
Frank A. GENUSA
v.
Renita Bynum DOMINIQUE, Evita Germaine Bynum and Robert L. Bynum, Jr.
No. 97 CA 0047.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
*785 David L. Dawson, Jr., Baton Rouge, for Plaintiff/Appellee Frank A. Genusa.
*786 A.M. "Tony" Clayton, Port Allen, Jamie Elizabeth Fontenot, Plaquemine, for Defendants/Appellants Renita Bynum Dominique, Evita Germaine Bynum and Robert L. Bynum, Jr.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment, granting a motion for summary judgment.

BACKGROUND
On January 14, 1982, appellee, Frank A. Genusa ("Genusa") sold a tract of immovable property ("the property"), located in East Baton Rouge Parish, to Robert L. Bynum ("decedent") by sale with mortgage for the sum of $18,500.00. In connection with the sale, decedent executed a promissory note, which was secured by a mortgage on the property. Decedent made some payments on the note, although many of the payments were late.
Decedent died intestate on November 4, 1984, survived by three children, Renita Bynum Dominique, Evita Germaine Bynum and Robert L. Bynum, Jr. ("appellants"). At the time of decedent's death, there was an unpaid balance on the promissory note to Genusa.
In April 1985, appellants filed a Petition for Possession in the Succession of Robert L. Bynum in the Nineteenth Judicial District Court. In this petition, appellants alleged that the decedent's estate was "entirely free of debt" and that they accepted the succession of decedent "unconditionally." Attached to the petition was a detailed descriptive list which listed the property as the only asset of the succession. The property was valued at $30,000.00 on the detailed descriptive list; however, there was no reference on the list to the mortgage held by Genusa. A Louisiana inheritance tax return was also attached to the petition, although it was not signed by appellants. The inheritance tax return valued the property at $30,000.00, but also referenced a mortgage on the property valued at $18,286.77. On April 19, 1985, a Judgment of Possession was signed by the trial court, placing each of the appellants in possession of a one-third interest in the property.
On May 7, 1985, appellants executed a cash sale of the property to Frances Forrester Bynum, decedent's ex-wife and appellants' mother, for the sum of $18,000.00. The act of sale made no reference to the mortgage on the property and there was no assumption of the mortgage note by Mrs. Bynum. However, the record reveals that Mrs. Bynum made payments to Genusa on the property for nearly eight years before defaulting on the note.

FACTS
On April 6, 1994, almost a year after the date of the last mortgage payment on the property, Genusa filed suit naming appellants and their mother as defendants, seeking the balance due on the promissory note with legal interest and attorney's fees. After appellants filed an answer to the petition, Genusa filed a motion for summary judgment on March 14, 1995, seeking judgment against appellant, Renita Bynum Dominique. Genusa filed a second motion for summary judgment on August 6, 1996, in which he sought judgment against all three appellants. In both motions, Genusa asserted that because appellants had accepted the succession of decedent unconditionally, they became personally liable for the full amount of the debts of decedent's estate, including the debt sued on in the petition. Genusa attached to the motions for summary judgment his affidavit showing the balance due on the note, in addition to a schedule reflecting payments made on the note and the outstanding balance of the principal and interest amounts. Appellants filed a memorandum in opposition to the motions for summary judgment; however, they did not file any countervailing affidavits or documents to contest the facts as set forth by Genusa in his motions and *787 supporting memorandums, or his affidavit and schedule of payments.
After a hearing, the trial judge rendered judgment in favor of Genusa and against appellants for the sum of $18,425.26 with 12% interest on the principal sum from April 19, 1993, until paid, plus the sum of $7,308.35, which represented accrued interest to April 19, 1993, and $2,875.00 in attorney's fees. The judgment was signed on September 18, 1996.
In their appeal from the judgment, appellants raise the following two assignments of error:
1. The trial court committed manifest error when it granted plaintiff's motion for summary judgment because mover was not entitled to judgment as a matter of law under La. C.C. Art. 1013, 1423 and La. C.C.P. Art. 3136.
2. The trial court committed manifest error when it granted plaintiff's motion for summary judgment because there exist [sic] a genuine issue of material fact as to the amount of judgment when the heirs executed a e 4descriptive list in lieu of an inventory, thereby limiting the liability to the extent of the value of their inheritance.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Sanders v. Ashland Oil, Inc., 696 So.2d at 1034. Summary judgment is warranted only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law. Bilbo v. Shelter Insurance Company, 96-1476, pp. 3-4 (La.App. 1st Cir. 7/30/97), 698 So.2d 691, 693. The court should not seek to determine whether it is likely that the party moving for summary judgment will prevail on the merits, but rather, whether there is an issue of material fact. Bilbo v. Shelter Insurance Company, 698 So.2d at 693. A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of the legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Sanders v. Ashland Oil, Inc., 696 So.2d at 1035.
At the time this suit was filed, Louisiana law discouraged summary judgments. However, by La. Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in paragraph A(2) that:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
See Sanders v. Ashland Oil, Inc., 696 So.2d at 1035. Because the amended version is a procedural change, it is applied retroactively. LSA-C.C. art. 6; Bilbo v. Shelter Insurance Company, 698 So.2d at 693. The effect of the 1996 amendment is to level the playing field between the parties in two ways: first, the supporting evidence submitted by the parties should be scrutinized equally, and second, the overriding presumption in favor of trial on the merits is removed. Bilbo v. Shelter Insurance Company, 698 So.2d at 693.
During 1997, article 966 was again amended by La. Acts 1997, No. 483. Pursuant to § 1 of the act, the legislature amended LSAC.C.P. art. 966 C, which addresses the movant's burden of proof to provide as follows:[2]
C. (1) After adequate discovery or after a case is set for trial, a motion which *788 shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment has been held to be an interpretative law subject to retroactive application. Morgan v. The Earnest Corporation, 97-0869, pp. 6-7 (La.App. 1st Cir. 11/7/97), 704 So.2d 272. Section 4 of Act 483 states: "[t]he purpose of Sections 1 and 3 of this Act is to clarify Acts 1996, No. 9, § 1 of the First Extraordinary Session of 1996 and to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3rd Cir. 12/26/96), 685 So.2d 691." (Emphasis added.) Therefore, LSA-C.C.P. art. 966, as amended by Act 483, is also applicable to this appeal.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sanders v. Ashland Oil, Inc., 696 So.2d at 1035.
Under LSA-C.C.P. art. 966 C(2), Genusa bears the burden of proof that the heirs accepted the succession unconditionally, thus rendering them personally liable for the debts of the succession. The undisputed facts reveal that the petition for possession contained an allegation by appellants that they accepted the succession unconditionally. On appeal, they argue that the fact they also filed a detailed descriptive list relieves them of personal liability for the debt secured by a mortgage on the property. However, this argument does not create a material issue of fact. Instead, it presents the court with a legal issue regarding the legal effect in 1984 of the filing of a detailed descriptive list with a petition of possession in which a succession is accepted unconditionally. Accordingly, we find no merit to appellants' contention that the summary judgment was improperly granted because material issues of fact regarding appellants' liability for the debt were disputed.
The next issue is whether the attachment of a detailed descriptive list to a petition for possession filed in 1984, in which the heirs accepted the succession unconditionally, operates to limit the liability of the heirs to the value of the succession effects, as if the acceptance had been with the benefit of inventory. If the answer to this determination is in the negative, we must further determine whether LSA-R.S. 9:1421[3] is to be applied retroactively.

*789 UNCONDITIONAL ACCEPTANCE OF A SUCCESSION
At the time of decedent's death and the filing of the petition of possession, the law governing the effects of an unconditional acceptance of a succession was that the heir who either expressly or tacitly accepted the succession unconditionally bound himself personally to pay all the debts of the succession. LSA-C.C. art. 1013. When an heir accepted a succession and took possession of its effects unconditionally, he became the owner of the property and the succession, as such, ceased to exist. The recourse of the creditors was against the heir or heirs. See LSA-C.C. art. 1423. If there was more than one heir, the creditor's action lay against each for his virile share. LSA-C.C. art. 1427; Kelley v. Kelley, 198 La. 338, 3 So.2d 641, 646 (1941).
However, both LSA-C.C. arts. 1013 and 1423 provided an exception to the personal liability of an heir who unconditionally accepted a succession. Pursuant to LSA-C.C. art. 1013, if, before acting as heir, the heir made a true and faithful inventory of the effects of the succession, he was shielded from personal liability for the succession debts. Similarly, under LSA-C.C. art. 1423, the only exception to the rule of unlimited personal liability for succession debts was "when the heirs, before meddling with the succession have caused a true and faithful inventory thereof to be made, as is prescribed in the section of this title which relates to the benefit of inventory...."
In their brief, appellants argue that these articles must be read in tandem with LSAC.C. art. 3136 which provides in pertinent part as follows:
Whenever an inventory of succession property otherwise would be required by law, the person at whose instance the inventory would be taken may file with the Department of Revenue and in the succession proceeding, in lieu of an inventory complying with articles 3131 through 3135, a detailed, descriptive list of all succession property.
Therefore, appellants assert that because they filed a detailed descriptive list with their petition for possession, they fall within the exception to the rule that an heir becomes personally liable for succession debts where he accepts unconditionally. We disagree.
The language of LSA-C.C. art. 3136 makes it clear that it only applies "when an inventory of succession property otherwise would by required by law." (Emphasis added.) Under the pertinent law, as it existed in 1984, when an heir accepted a succession unconditionally, no inventory was required, although it was allowed if the heir desired to limit his liability for succession debts to the effects of the succession. Articles 1423 and 1013 do not except from the effects of a simple acceptance, an heir's personal liability for succession debts where the heir files a detailed descriptive list. Accordingly, under the law in effect at the time of decedent's death and the filing of the petition for possession, appellants' unconditional acceptance of the succession rendered them personally liable for the debts of decedent's succession.

RETROACTIVITY OF LSA-R.S. 9:1421
Appellants further argue that they are not personally liable for the debt secured by the mortgage on the property because LSA-R.S. 9:1421, which was enacted in 1986, should be applied retroactively. They assert that the law is both procedural and interpretive, thus warranting retroactive application. Pursuant to LSA-R.S. 9:1421, every successor is presumed and is deemed to have accepted a succession under benefit of inventory, even though the acceptance is unconditional, and where an inventory or descriptive list has been executed. Thus, if this statute is applied retroactively, appellants' liability for payment of the promissory note executed in favor of Genusa is limited to the extent and value or amount of their inheritance. Genusa contends that LSA-R.S. 9:1421 is substantive; therefore, it can only be applied prospectively. Therefore, the question presented is whether appellants' unconditional acceptance of decedent's succession, which occurred prior to the enactment of LSA-R.S. 9:1421, should be governed by LSA-R.S. 9:1421.
The general rule against retroactive application of legislative enactments and its exceptions is codified in LSA-C.C. art. 6. Rousselle v. Plaquemines Parish School *790 Board, 93-1916, p. 10 (La.2/28/94), 633 So.2d 1235, 1244; Cole v. Celotex Corporation, 599 So.2d 1058, 1063 (La.1992); Adams v. City of Baton Rouge, 95-2515, p. 11 (La.App. 1st Cir. 4/30/96), 673 So.2d 624, 631, writs denied, 96-1491 and 1492 (La.9/20/96), 679 So.2d 439. LSA-C.C. art. 6 provides that "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Additionally, LSA-R.S. 1:2, the governing rule of statutory construction, provides that no section of the Revised Statutes shall be applied retroactively, unless expressly so stated. Adams v. City of Baton Rouge, 673 So.2d at 631. However, this statute has been construed as co-extensive with LSA-C.C. art. 6. See St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 816 (La.1992).
Reading LSA-R.S. 1:2 and LSA-C.C. art. 6 together to determine whether a legislative enactment is to be applied retroactively or prospectively, the court must ascertain whether in the enactment the legislature expressed its intent regarding retroactive or prospective application. If the legislature did so and there are no other constitutional implications, our inquiry is at an end. However, if the legislature did not express an intention regarding retroactive or prospective application, we must classify the enactment as substantive, procedural, or interpretive. Cole v. Celotex Corporation, 599 So.2d at 1063; Adams v. City of Baton Rouge, 673 So.2d at 632.
Consequently, in order to determine whether Acts 1986, No. 602 should be applied retroactively, we must perform the two-step approach prescribed in Cole v. Celotex Corporation, 599 So.2d at 1063.
First, it must be ascertained whether the enactment expressed legislative intent regarding retroactive or prospective application. In enacting LSA-R.S. 9:1421, the legislature did not provide for a specific effective date, nor did the legislature address its intent regarding the retroactive or prospective application of the amendment. La. Acts 1986, No. 602 contained only one section, namely § 1, which set forth the enactment of LSA-R.S. 9:1421. Act 602 did not contain any other section, nor did it otherwise provide a specific effective date for the Act. As a result, pursuant to LSA-Const. art. 3, § 19[4], the general effective date of all laws enacted at the 1986 Regular Session was August 30, 1986.
Because the legislature, in enacting LSA-R.S. 9:1421, did not express any intention as to whether the new provision was to be limited to prospective application only or whether the courts were to afford retroactive application to that provision, our inquiry does not end here. We must then determine whether LSA-R.S. 9:1421 is substantive, procedural, or interpretive. Adams v. City of Baton Rouge, 673 So.2d at 633. See St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817.
A substantive law has been defined as that which creates, confers, defines, destroys, or otherwise regulates rights, liabilities, causes of action, or legal duties. Rollette v. State Farm Mutual Automobile Insurance Company, 619 So.2d 832, 835 (La.App. 1st Cir.1993). Stated another way, substantive laws either establish new rules, rights, and duties or change existing ones. St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited I v. Louisiana Insurance Guaranty Association, 94-0128, p. 4 (La.App. 1st Cir. 11/10/94), 645 So.2d 1240, 1242, writ denied, 94-3028 (La.2/17/95), 650 So.2d 252.
Procedural, remedial, or curative statutes relate to the form of the proceeding or operation of the laws. State, Department of Transportation and Development v. Hellenic, Inc., 93-0870 and 93-0871, p. 8 (La. App. 1st Cir. 4/8/94), 636 So.2d 1004, 1009, *791 writ denied, 94-1637 (La.10/7/94), 644 So.2d 635. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or operation of the laws. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244. In other words, procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Curative acts are those that remove past disabilities in order to effect the true intent of the legislature. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009.
Interpretive laws, on the other hand, merely establish the meaning the statute had from the time of its enactment. Rousselle v. Plaquemines Parish School Board, 633 So.2d at 1244; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited I v. Louisiana Insurance Guaranty Association, 645 So.2d at 1242. It is the original statute, not the interpretive one, which establishes the rights and duties. St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 817; Tidelands Limited I v. Louisiana Insurance Guaranty Association, 645 So.2d at 1242. When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may then be given retroactive effect because it does not change pre-existing law, it merely clarifies it. State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009. Interpretive laws change existing standards by redefining and returning to their original meaning, providing the legislature with the opportunity to pronounce the correct interpretation to be given to existing laws. Legislation, however, which changes settled existing law falls outside the category of interpretive legislation. Adams v. City of Baton Rouge, 673 So.2d at 633; State, Department of Transportation and Development v. Hellenic, Inc., 636 So.2d at 1009.
As previously explained, prior to the 1986 amendment, when an heir accepted a succession unconditionally, he became personally bound for the debts of the succession. See Succession of McCall v. McCall, 550 So.2d 328, 333-34 (La.App. 3rd Cir.1989). See also Pacific Land Title Corporation v. Executive Office Centers, Inc., 420 So.2d 1021, 1022-24 (La.App. 5th Cir.1982) (heir who requested an administration of a succession and the taking of an inventory became personally liable for the succession debts when the heir went into possession before the administration was complete). The only exception that the legislature specifically provided to the heir becoming personally liable was the filing of an inventory. There was no exception which resulted from filing a detailed descriptive list. See McCall v. McCall, 550 So.2d at 333-34. Absent the filing of an inventory, creditors could collect the succession debt from the heir who unconditionally accepted the debtor's succession. LSA-C.C. arts. 1013 and 1423.
LSA-R.S. 9:1421, which was not an amendment to a previously existing statute, both created a new principle in the area of acceptances of successions, and at the same time, added another means by which an heir could unconditionally accept a succession, yet still be shielded from personal liability for the debts of the succession. Specifically, LSAR.S. 9:1421 presumed and deemed all acceptances of successions to be with the benefit of inventory, and thus, the heir did not become personally liable for succession debts, even where the acceptance was unconditional, as long as an inventory or detailed descriptive list was filed. Until the enactment of this statute, the heir who accepted unconditionally, but filed a detailed descriptive list, rather than an inventory, remained personally liable for the debts of the succession. See McCall v. McCall, 550 So.2d at 333-34. Accordingly, because the enactment of LSA-R.S. 9:1421 would operate to divest Genusa of his right to bring a personal action to collect a debt of the succession from heirs who unconditionally accepted a succession, but did not file an inventory, it clearly effected a change in existing rights. Therefore, it must be categorized as substantive, and applied prospectively only.
In support of appellants' argument that LSA-R.S. 9:1421 is interpretive, they contend that it was enacted to combine and *792 clarify the effects of LSA-C.C.P. art. 3136 on LSA-C.C. arts. 1013 and 1423. We reject this argument for several reasons.
First, we note that if LSA-R.S. 9:1421 was an attempt by the legislature to interpret or clarify the effect it intended LSA-C.C.P. art. 3136 to have on the exception provided in LSA-C.C. arts. 1013 and 1423, it would have referenced LSA-C.C.P. art. 3136 in the new statute. Instead, it only referenced the civil code provisions. Second, if the new statute was intended to clarify that LSA-C.C.P. art. 3136 provided an additional exception to the personal liability provided in LSA-C.C. arts. 1013 and 1423, it could have simply amended those articles to provide that an heir does not become personally liable where he files an inventory or detailed descriptive list. Instead, these provisions remained unchanged. Finally, we note that because LSA-R.S. 9:1421 changed settled law, it falls outside of the category of legislation labeled "interpretive." See St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d at 820.
Nor do we accept appellants' assertion that because LSA-R.S. 9:1421 references the acceptance of successions, it is procedural. This statute did not address the methods for enforcing a right to accept a succession. Instead, it changed the effect the filing of a detailed descriptive list had on the personal liability previously borne by an heir who accepted a succession unconditionally, as well as creating a principle that all acceptances are presumed and deemed to be with the benefit of inventory where a detailed descriptive list or inventory is filed.[5]
Accordingly, we conclude that the trial court properly granted Genusa's summary judgment on the issue of whether appellants could be held liable for the unpaid mortgage, even if the amount of the debt exceeded the value of the effects of the succession.

AMOUNT OF DEBT
Appellants further argue that summary judgment was improper because there was a disputed fact regarding the amount of the debt. However, appellants failed to file any proof, through the form of discovery responses or affidavits, nor was there any proof in the pleadings, to controvert the amounts Genusa alleged were unpaid and owed through his affidavit and payment schedule.
Appellants also complain that a genuine issue of material fact existed concerning what amount they inherited. However, the inheritance tax return shows they each received one-third of the value of the succession assets. When a deceased leaves two or more heirs, LSA-C.C. art. 1427 binds each heir to contribute to the payment of the succession debts in proportion to the part which each heir has in the succession. Thus, pursuant to LSA-C.C. art. 1427, Genusa is entitled to collect from each heir their virile share of the debt. Therefore, he can collect one-third of the debt from each heir. Accordingly, there is no issue of material fact in dispute regarding each heir's liability for the debt owed to Genusa.

ANSWER TO APPEAL
In the judgment, based upon the attorney's fee provision in the promissory note, the trial court awarded Genusa $2,875.00 for attorney's fees against appellants. Genusa answered the appeal, requesting additional attorney's fees for opposing the appeal.
Generally, an increase in attorney's fees should be awarded when a party who was awarded attorney's fees in the trial court is forced to and successfully defends an appeal. Osborne v. Ladner, 96-0863, p. 19 (La.App. 1st Cir. 2/14/97), 691 So.2d 1245, 1259.
After reviewing the entire record in this matter, we find that an increase in the attorney's fees award is warranted. The appeal perfected by appellants necessitated additional work for Genusa's attorney, including the preparation of an answer to the appeal and preparation of an appellate brief. Under the circumstances, we conclude that Genusa *793 is entitled to an additional award of $1,000.00 for attorney's fees. The judgment will be amended accordingly.

CONCLUSION
For the reasons set forth in this opinion, the judgment of the trial court is amended to award Genusa additional attorney's fees of $1,000.00, and as amended, is affirmed at appellants' costs.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Honorable Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Act 483 also rewrote paragraph E and deleted paragraphs F and G of LSA-C.C.P. art. 966.
[3] LSA-R.S. 9:1421, enacted by La. Acts 1986, No. 602, § 1, provides as follows:

Notwithstanding any provision in the law to the contrary, including but not limited to Civil Code Articles 976 through 1013 and Civil Code Articles 1415 through 1466, every successor is presumed and is deemed to have accepted a succession under benefit of inventory even though the acceptance is unconditional, and where an inventory or descriptive list has been executed. In such case, every heir or legatee, whether particular or under universal title, shall not in any manner become personally liable for any debt or obligation of the decedent or his estate, except to the extent and value or amount of his inheritance; however, any such heir or legatee may, in the petition for possession or by a separate instrument in writing, personally obligate himself for any or all of such debts or obligations.
[4] In 1986, LSA-Const. Art. 3, § 19 provided as follows:

All laws shall take effect on the sixtieth day after final adjournment of the session in which they were enacted, and shall be published prior thereto in the official journal of the state as provided by law.
Act 602 was enacted during the regular session of the 1986 legislature which adjourned on July 1, 1986.
[5] It also appears that LSA-R.S. 9:1421 changed the legal principle relied upon in Pacific Land Title Corporation v. Executive Office Centers, 420 So.2d at 1022-24, that an heir who filed an inventory, but went into possession before the completion of the administration of the succession became personally liable for the succession debts.