CLAIBORNE, Judge Pro Tem.
Plaintiffs seek review of three summary judgments and one judgment maintaining an exception of no right of action rendered by the trial court dismissing plaintiffs’ claims.[2] We affirm.
FACTS AND PROCEDURAL HISTORY
This litigation arose out of an accident in Baton Rouge, Louisiana, on February 21, 1998, at the Spanish Town Mardi Gras Parade which was sponsored by a nonprofit organization, The Mystic Krewe for the Preservation of Lagniappe in Louisiana, Inc. (Mystic Krewe). According to plaintiffs’ original petition, this was the first Mardi Gras parade ever attended by Tiffany Binkley. Tiffany’s grandmother, Genie Massey, took seven-year-old Tiffany to the parade along with some other family members. They found a spot along the parade route near the intersection of North Third Street and North Boulevard. During the parade, a pickup truck (owned by Robin Toler and insured by State Farm Mutual Automobile Insurance Company) suddenly left the parade route after its driver, John E. Landry, momentarily lost consciousness. Mr. Landry drove into the crowd of spectators where plaintiffs were viewing the parade. Tiffany was seriously injured when she was run over by the pickup truck.
Plaintiffs filed suit[3] for personal injury damages against Mr. Landry, Ms. Toler, State Farm, Mystic Krewe and its insurer, Essex Insurance Company (Essex), and the City of Baton Rouge (City). Plaintiffs later amended their petition to include an action against Mystic Krewe’s insurance agent, Mclnnis, Tyner & Daniel, Inc. (Mclnnis Agency), for negligently failing to procure insurance |3covering injuries to spectators at the parade as requested by Mystic Krewe. The amended petition also included allegations of gross negligence on the part of Mr. Landry and Mystic Krewe. Plaintiffs alleged that Tiffany’s injuries were caused by the gross negligence of Mystic Krewe in failing to supervise drivers and in allowing Mr. Landry to drive the pickup truck in the parade even though he had been drinking alcoholic bev *21 erages and suffered from an alleged medical condition which caused him to “black out.” Essex was named as a defendant because it issued a “Spectator Liability” policy of insurance to Mystic Krewe. The City was named as a defendant for allegedly negligently issuing the parade permit to Mystic Krewe, negligently approving a dangerous parade route, and negligently failing to protect the public viewing the parade.
Essex and Mystic Krewe filed motions for summary judgment based upon statutory immunity provided to Mardi Gras krewes in Louisiana Revised Statute 9:2796.[4] The City filed a motion for summary judgment based upon statutory immunity provided to public entities in Louisiana Revised Statute 9:2798.1. The Mclnnis Agency filed an exception of no right of action based upon the lack of a contractual relationship between it and plaintiffs. After separate hearings, the trial court granted all three motions for summary judgment and maintained the exception of no right of action, thereby dismissing all of plaintiffs’ claims.[5] Plaintiffs appeal.[6]
IJDISCUSSION
Summary Judgment — Standard of Review
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Rambo v. Walker, 96-2538, p. 4 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2); Rambo, 96-2538 at 5, 704 So.2d at 32.
The burden of proof is on the movant. If the moving party will not bear the burden of proof at trial on the matter before the court on the motion and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the non-moving party must come forward with factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La.Code Civ. P. art. 966(C)(2). If the non-moving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La.Code Civ. P. arts. 966 and 967; Williams v. Shoney’s, Inc., 99-0607, pp. 3-4 (La.App. 1st Cir.3/31/00), 764 So.2d 1021, 1023.
*22 Appellate courts review motions for summary judgment de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Williams, 99-0607 at 4, 764 So.2d at 1023; Rambo, 96-2538 at 5, 704 So.2d at 32-33.
| ¡¡Mardi Gras Krewe Immunity Statute— La. R.S. 9:2796
Both Mystic Krewe and Essex base their summary judgment motions on the statutory immunity provided to Mardi Gras krewes in La. R.S. 9:2796(A).[7] The version of this statute in effect at the time of the accident on February 21, 1998, provided, in pertinent part:
A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization which presents Mardi Gras parades ... or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades, for any loss or damage caused by any member thereof or related to the parades presented by such krewe or organization, unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence. (Emphasis added.)
The expansive language in La. R.S. 9:2796(A) was intended to cover a broad spectrum of risks and losses associated with parading. See Gardner v. Zulu Social Aid and Pleasure Club, Inc., 98-1040, p. 5 (La.App. 4th Cir.2/10/99), 729 So.2d 675, 678, writ denied, 99-0697 (La.5/7/99), 740 So.2d 1285. The only exception to the grant of immunity contained in the statute at the time of the accident was if the loss was caused by the deliberate and wanton act or gross negligence of the krewe or organization.
Act No. 1264 of 1999, effective August 15, 1999 (after the date of the instant accident), created an additional exception to the grant of immunity for loss or damage caused when members of the krewe or organization were operating a motor vehicle within the parade. The Act also made clear that the deliberate and wanton acts or gross negligence of any member (not just the krewe or ^organization) were actionable. Act No. 1264 of the 1999 Regular Session reads, in pertinent part, as follows:
Section 1. R.S. 9:2796(A) is hereby amended and reenacted to read as follows:
A.... [N]o person shall have a cause of action against any krewe or organization, or any member thereof, which presents Mardi Gras parades ... or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades, for any loss or damage caused by any member thereof, during or in conjunction with or related to the parades presented by such krewe or organization, unless said loss or damages was caused by the de *23 liberate and wanton act or gross negligence of the krewe or organization, or any member thereof as the case may be, or unless said member was operating a motor vehicle within the parade or festival. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence. (Additions or changes indicated by underline.)
Unfortunately for plaintiffs, Act No. 1264 did not provide for the retroactive application of this pertinent change in the statute. Likewise, Act No. 1264 did not provide a specific effective date for the Act. As a result, pursuant to La. Const, art. 3, § 19, the general effective date of all laws enacted at the 1999 Regular Legislative Session was August 15,1999.
The legislature, in enacting the change in the language of La. R.S. 9:2796(A), did not express any intention as to whether the new provision was to be limited to prospective application only or whether the courts were to afford retroactive application to that provision. We must therefore determine whether La. R.S. 9:2796(A) is substantive, procedural, or interpretive. See Genusa v. Dominique, 97-0047, p. 10 (La.App. 1st Cir.2/20/98), 708 So.2d 784, 790. La. Civ.Code art. 6 provides the general rule against retroactive application of substantive legislative enactments. In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary. La. Civ.Code art. 6.
|7A substantive law either establishes new rules, rights, and duties or changes existing ones. Genusa, 97-0047 at 10, 708 So.2d at 790. A procedural law prescribes a method for enforcing a substantive right and relates to the form of the proceeding or operation of law. Genusa, 97-0047 at 10, 708 So.2d at 791. An interpretive law merely establishes the meaning the statute had from the time of its enactment; it does not establish the rights and duties. Genusa, 97-0047 at 10-11, 708 So.2d at 791.
Act No. 1264 of 1999 clearly added an additional exception to the grant of immunity for loss or damage sustained in a Mardi Gras parade. The change affected the existing rights of persons having a cause of action for damages against krewes or organizations which present Mardi Gras parades. By enacting this change, the legislature obviously intended to make an exception to immunity which did not exist in the prior version of the statute. The change allowed a cause of action when the damage arose out of the operation of a motor vehicle within the parade by a member of the krewe or organization. Because a new right was created, the change in the language of La. R.S. 9:2796(A) must be categorized as substantive, and applied prospectively only. Therefore, loss or damage caused by the deliberate and wanton act or gross negligence of the krewe or organization was the sole exception to immunity afforded Mardi Gras krewes at the time of this accident. This conclusion obviates the necessity for determining under what conditions the krewe might be liable for torts arising out of the operation of a motor vehicle by a member of the organization.
Accordingly, our review of the summary judgments granted in favor of Mystic Krewe and its insurer, Essex, must begin with a determination, based on the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, of whether there exists a genuine issue of material fact regarding the gross negligence of Mystic Krewe. *24 Plaintiffs’ amending petition |sclaims that Mystic Krewe’s “acts and omissions arose to the level of gross negligence as defined under Louisiana law as well as ordinary negligence.” The evidence produced in conjunction with the Mystic Krewe and Essex motions for summary judgment were: (1) a certificate from the Secretary of State indicating that Mystic Krewe was a non-profit corporation; (2) an affidavit of Charles Fisher, the treasurer of Mystic Krewe, verifying that no member of Mystic Krewe was paid any compensation in connection with the parade; (3) a copy of the parade permit issued to Mystic Krewe; (4) a copy of the 1998 Spanish Town Mardi Gras Parade Rules for Participants; and (5) excerpts from deposition testimony of Charles Fisher, Bruce Childers, and Mr. Landry.
The deposition testimony of Mystic Krewe’s treasurer, Charles Fisher, established that Mystic Krewe handed out a set of rules to drivers at a meeting informing drivers of their entry number (or order/position) in the parade. The rules specifically prohibited drinking and required all drivers to obey all rules of the road. Mr. Fisher explained that krewe members were basically on the honor system to follow the rules.
The affidavit of Mystic Krewe’s former officer and past president, Bruce Childers, established that Mystic Krewe was a nonprofit organization. In his deposition, Mr. Childers testified that “no drinking” was a rule of Mystic Krewe and the rules were gone over with the drivers at a meeting which all drivers in the parade were strongly encouraged to attend four or five days prior to the parade. Mr. Childers further testified that Mystic Krewe members were well aware of the no drinking rule and Mystic Krewe had always enforced the rule. The rules were listed on the back of a card with the entry number that drivers were required to display in their vehicles. The 1998 Spanish Town Mardi Gras Parade Rules for Participants specifically provided that “[a]ny driver observed throwing or drinking will have his float ejected from the parade,” and “[a]ll regular rules of the road 19apply during the parade, including the open container law. This means no bottles or cans on the float.”
The deposition testimony of Mr. Landry established that he lost consciousness just before the pickup truck he was driving entered the crowd. Mr. Landry testified about three other instances in his life where he had felt faint or passed out, with no similarities in any incident other than regaining consciousness right away. Mr. Landry admitted to drinking a beer prior to the beginning of the parade and another beer handed to him by his wife during the course of driving the parade.
In plaintiffs’ opposition to the summary judgments, they attached a copy of the Baton Rouge Police Department news release regarding Mr. Landry’s blood test results. The news release stated that Mr. Landry “registered a blood alcohol content of 0.04 g% while hospitalized in the immediate aftermath of the accident,” and under Louisiana law “is not presumed to be under the influence and cannot be charged with Driving While Intoxicated.” None of the deposition testimony established whether any Mystic Krewe officer or member (other than Mrs. Landry) witnessed Mr. Landry drinking a beer, much less appearing intoxicated or in any way raising suspicion about his driving capabilities. The deposition testimony of Mr. and Mrs. Landry indicated that there were no established check points before or during the parade for the purpose of checking drivers by any representative of Mystic Krewe. Furthermore, Mr. Landry did not attend the drivers’ meeting, and he was never *25 questioned by any representative of Mystic Krewe about his driving record or any health issues before being allowed to drive a vehicle in the parade.
After reviewing the pleadings, depositions, exhibits attached to depositions, and affidavits, we conclude that Mystic Krewe and its insurer, Essex, bore their burdens of proving immunity under La. R.S. 9:2796 for purposes of the summary judgment. We agree with the trial court that plaintiffs failed to create an issue of Immaterial fact concerning whether members of Mystic Krewe acted in a deliberate and wanton or grossly negligent manner in supervising the drivers in the parade. In Ambrose v. New Orleans Police Department Ambulance Service, et al., 93-3099, pp. 5-6 (La.7/5/94), 639 So.2d 216, 219-220, the Louisiana Supreme Court stated:
Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the “want of even slight care and diligence” and the “want of that diligence which even careless men are accustomed to exercise.” State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942). Gross negligence has also been termed the “entire absence of care” and the “utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others.” Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198 (E.D.La.1953) (applying Louisiana law). Additionally, gross negligence has been described as an “extreme departure from ordinary care or the want of even scant care.” W. Page Keeton, et.al., Prosser & Keeton on the Law of Torts, § 34, at 211 (5th ed.1984); 65 C.J.S. Negligence, § 8(4)(a), at 539-40 (1966 & Supp.1993). (“There is often no clear distinction between such [willful, wanton, or reckless] conduct and ‘gross’ negligence, and the two have tended to merge and take on the same meaning.” Falkowski v. Maurus, 637 So.2d 522 (La.App. 1st Cir.), writ denied, 629 So.2d 1176 (La.1993) (quoting Prosser & Keeton, supra, at 214)). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.
The Ambrose definition of gross negligence has been applied numerous times to determine whether summary judgment was appropriate in light of the Mardi Gras immunity statute.[8] In order to prevail in their opposition to the motions for summary judgment by Mystic Krewe and its insurer, Essex, plaintiffs must establish facts showing more than ordinary negligence on the part of Mystic Krewe or Mr. Landry. Plaintiffs failed to establish any facts supporting the allegation of gross negligence on the part of Mystic Krewe. Although Mr. Landry did apparently have some alcohol to drink before and during the parade, plaintiffs have made no showing that the Mystic Krewe organization displayed an “utter 11, disregard” or an “entire absence of care” with respect to the spectators at the parade. The record shows that plaintiffs’ damages were caused by the actions of Mr. Landry when he lost consciousness while driving in the parade. The record does not reveal any facts evidencing gross negligence on the part of Mr. Landry or the Mystic Krewe organization.
The difference between ordinary negligence and gross negligence is the lev *26 el or degree of lack of care shown by the offending party. To amount to gross negligence, the conduct of the offender must not only show a lack of care, it must show an “entire,” “utter,” “complete,” or “extreme” lack of care. Mullins v. State Farm Fire and Cas. Co., 96-0629, p. 6 (La.App. 1st Cir.6/27/97), 697 So.2d 750, 754. Operating a vehicle after having an alcoholic beverage, as Mr. Landry did in the instant case, may constitute a negligent act. Likewise, the lack of closer supervision of drivers in the parade could be construed as negligence on the part of Mystic Krewe. However, we believe such actions taken, without more, would only amount to ordinary negligence rather than gross negligence.
After careful review, we find no error in the trial court’s conclusion that Mystic Krewe and its insurer, Essex, were entitled to summary judgment in their favor as a matter of law. The record supports the trial court’s conclusion that plaintiffs failed to prove the existence of a genuine issue of material fact concerning whether members of Mystic Krewe acted in a deliberate and wanton or grossly negligent manner in the supervision of the drivers in the parade. Thus, we find plaintiffs’ assignments of error regarding the summary judgments granted to Mystic Krewe and Essex to be without merit.
Inasmuch as we affirm the trial court’s granting of summary judgments in favor of Mystic Krewe and Essex, discussion of the remaining assignment of error | ^concerning plaintiffs’ right of action against Mystic Krewe’s procuring insurance agent (Mclnnis Agency) is rendered moot.[9]
CONCLUSION
For the reasons assigned, we affirm the trial court’s judgments at plaintiffs’ cost.
AFFIRMED.

. Plaintiffs are Gay Shirlyn Binkley, individually and on behalf of her minor child, Tiffany Binkley, and Tiffany’s grandmother, Genie Massey.

.Several suits arose out of the accident at the parade; three cases (docket numbers 450,-781, 449,151, and 450,961) were consolidated and transferred to Division "A”, before the Honorable Robert Downing on September 4, 1998; however, this appeal pertains only to the Binkley case, number 450,781.

.In a prior motion for summary judgment, Essex relied on certain exclusions in the commercial liability policy issued to Mystic Krewe; however, the policy at issue is not a part of the record. Both of the motions for summary judgment granted by the trial court in favor of Essex were based upon the Mardi Gras Krewe statutory immunity relied upon by Essex's insured, Mystic Krewe. Once the trial court ruled that Mystic Krewe was not grossly negligent and, therefore, not liable to plaintiffs for their damages, under the language of La. R.S. 9:2796, there was no cause of action against it or its insurer, Essex.

. Plaintiffs settled their claims against State Farm, Mr. Landry and Ms. Toler prior to the trial court rulings that dismissed plaintiffs’ claims against Essex, Mystic Krewe, the City and the Mclnnis Agency.

. Pursuant to a joint motion by plaintiffs and the City, the appeal of the trial court's granting of summary judgment in favor of the City was dismissed on March 7, 2001.

. Section B of La. R.S. 9:2796 provides for assumption of risk by spectators struck by items thrown from floats in a parade, unless the damage was caused by the deliberate and wanton act or gross negligence of the krewe/organization. The instant case does not involve "throws” from a float, therefore Section B is not at issue.

. See Schell v. K & K Ins. Group, Inc., 99-786, p. 4 (La.App. 5th Cir.2/16/00), 756 So.2d 546, 548; Orlando v. Corps De Napoleon, 96-991, p. 5 (La.App. 5th Cir. 12/20/96), 687 So.2d 117, 119; Trondsen v. Irish-Italian Parade Committee, 95-28, p. 4 (La.App. 5th Cir.5/10/95), 656 So.2d 694, 696, writ denied, 95-1467 (La.9/22/95), 660 So.2d 476.

. We note, moreover, that this court has consistently held that an insurance agent's duty of care to procure insurance for its client does not extend to a non-insured tort victim. See Bustamante v. State Farm Mut. Auto. Ins. Co., 517 So.2d 232, 233 (La.App. 1st Cir.), writ denied, 518 So.2d 510 (La.1988).