# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### NO. 2022 CA 0064

### TERRY PORCHE AND NAOMI PORCHE

### VERSUS

### ADAM NAQUIN, TRI REGION WOMENS CARNIVAL CLUB, INC. AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

*Judgment Rendered:* __SEP 2 6 2022__

\* \* \* \* \* \* \* \*

Appealed from the
**32nd Judicial District Court**
In and for the Parish of Terrebonne
State of Louisiana
Case No. 182947, Div. D

The Honorable David W. Arceneaux, Judge Presiding

\* \* \* \* \* \* \* \*

| | |
|---|---|
| Mary W. Riviere<br>Hunt B. Downer, Jr.<br>David C. Pellegrin, Jr.<br>Joseph L. Waitz, III<br>Ellen D. Doskey<br>Houma, LA | Counsel for Plaintiffs/Appellants<br>Terry Porche and Naomi Porche |
| Jerry W. Sullivan<br>Paul R. Solouki<br>Metairie, LA | Counsel for Defendants/Appellees<br>Ladies Carnival Club, Inc., d/b/a<br>Krewe of Hyacinthians and Certain<br>Underwriters at Lloyd's, London |

\* \* \* \* \* \* \* \*

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

Welch J. concurs without reasons

**LANIER, J.**

The Thirty-Second Judicial District Court granted a motion for summary judgment filed by the appellees, Ladies Carnival Club, Inc. d/b/a Krewe of Hyacinthians (Hyacinthians) and Certain Underwriters at Lloyd's, London (Lloyd's), which dismissed the claims of the appellants, Terry and Naomi Porche, with prejudice. The Porches appeal from the adverse judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On May 16, 2018, the Porches filed a petition for damages against Adam Naquin, TRI Region Women's Carnival Club, Inc. (also referred to as the Krewe of Aquarius), and State Farm Mutual Automobile Insurance Company (State Farm), for damages they allegedly sustained due to a vehicle accident between Mr. Porche and Mr. Naquin.

The Porches alleged that on the morning of February 4, 2018, Mr. Porche, a member of the Houma Shrine Club (Shriners), escorted a procession of members of Hyacinthians and Aquarius to a parade staging area located at Southland Mall in Houma, Louisiana. Prior to the escort, a safety meeting was allegedly held with the drivers who were escorting the krewe members. The Aquarius drivers were instructed to drive in a single-file line and not allow any vehicles that were not part of the procession to enter and get between their vehicles. The procession started with Hyacinthians, and Aquarius followed directly behind.

The Shriners escorted the krewes to the staging area on their motorcycles. The Shriners traveled on the left side of the procession to block incoming traffic from side streets. Once the entire procession would entirely pass a side street blocked by a Shriner motorcycle, that motorcycle would then travel ahead of the procession to the next unblocked side street. The Shriners repeated this process until the entire procession had reached the staging area.

2

The Porches alleged that the lead vehicle for Aquarius failed to stay directly behind the last vehicle for Hyacinthians, creating a gap between the two krewes. Early in the procession, a vehicle driven by Mr. Naquin entered that gap and drove between the two krewes for most of the procession. The Porches alleged that the lead driver for Aquarius was operating within the course and scope of his duties for Aquarius and was either an agent or employee of Aquarius.

Mr. Porche operated his motorcycle in the aforementioned manner, traveling northbound on Louisiana Highway 24. As he was en route to block the next side street for the procession, the vehicle operated by Mr. Naquin suddenly turned left onto a bridge as Mr. Porche was passing him. Mr. Naquin struck Mr. Porche, throwing him off his motorcycle and injuring him. The Porches alleged that Mr. Naquin had an auto insurance policy issued to him by State Farm, and that the defendants were liable to the Porches for general damages, medical expenses, loss of income, loss of consortium, and property damage.[1]

On January 25, 2019, the Porches filed a first supplemental and amended petition for damages, which added Hyacinthians as a defendant. The petition made the same allegations and prayer for damages against Hyacinthains as were made against Aquarius, which included that the drivers for Hyacinthians also attended the safety meeting, that the drivers for Hyacinthians failed to follow the pre-processional safety instructions and allowed a gap to form between the two krewes, and that the last driver for Hyacinthains was operating within the course and scope of his duties for Hyacinthians and was either an agent or employee of Hyacinthians. In a second supplemental and amended petition filed November 20, 2019, the Porches added as defendants Lloyd's, the insurer for Hyacinthians, and Darrell Charpentier, who the Porches alleged was the driver/operator of a vehicle

---

[1] The Porches filed a separate appeal in *Porche v. Naquin, et al.*, 2021-0689 (La. App. 1 Cir. __/__/__), ___ So.3d ___, which involves a lawsuit against Aquarius.

3

either for Hyacinthians or Aquarius that played a part in allowing the gap in the procession to form.

On May 5, 2021, Hyacinthians and Lloyd's filed a motion for summary judgment, arguing that the statutory immunity provided by La. R.S. 9:2796 applied to Hyacinthians, and that there was no genuine issue as to material fact that Hyacinthians did not engage in any deliberate and wanton act or gross negligence. Further, the defendants argued that no Hyacinthian member or compensated employee negligently operated a motor vehicle within the procession. While the procession was an event related to the Hyacinthian parade that rolled later that day, the defendants argued that the vehicle driven by Mr. Charpentier—a party bus— was not part of the official Hyacinthian procession or parade.

On August 8, 2021, the trial court signed a judgment granting the motion for summary judgment in favor of the defendants and dismissing the Porches' petition as to those defendants with prejudice. In its oral reasons for judgment, the trial court stated that La. R.S. 9:2796[2] limited the liability against Mardi Gras krewes and their members for losses or damages sustained by others when the krewe or its

---

[2] At the time of the rendering of this judgment, La. R.S. 9:2796(A) read as follows:

A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization, any group traditionally referred to as Courir de Mardi Gras, or any member thereof, which presents Mardi Gras parades, including traditional rural Mardi Gras parades, processions, or runs in which participants ride on horseback, march, walk, or ride on horse-drawn or motordrawn floats, or wheeled beds, or other parades, whether held on a public or private street or waterway, or in a building or other structure, or any combination thereof, connected with pre-Lenten festivities or the Holiday in Dixie Parade, or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades or courirs, for any loss or damage caused by any member thereof, during or in conjunction with or related to the parades or courirs presented by such krewe or organization, unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization, or any member thereof as the case may be, or unless said member was operating a motor vehicle within the parade or festival and was a compensated employee of the krewe, organization, or courir. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence.

The statute has been since amended. See 2022 La. Acts No. 740, § 1 (eff. Aug 1, 2022).

4

members are acting in conjunction with or in relation to parades in which the krewe or its members are involved. The court noted that Mr. Nicholas Hebert, who was a compensated employee of Hyacinthians and operated the last vehicle in the Hyacinthians portion of the procession, would not have been covered by La. R.S. 9:2796, but was not named a defendant. The Porches have appealed this judgment.

## ASSIGNMENT OF ERROR

The Porches contend that the trial court erred in granting the defendants' motion for summary judgment because: (a) the defendants failed to carry their burden of proving their entitlement to the statutory immunity of La. R.S. 9:2796; and (b) there are genuine issues of material fact demonstrating that the Porches' damages were caused by a Hyacinthians member and compensated employee who was operating a motor vehicle within the procession at the time of the accident.

## STANDARD OF REVIEW

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action ... and shall be construed to accomplish these ends." *Ladner v. REM Management, LLC*, 2020-0601 (La. App. 1 Cir. 12/30/20), 318 So.3d 897, 900, writ denied, 2021-00151 (La. 3/23/21), 313 So.3d 271, quoting La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 (A)(3). A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Ladner*, 318 So.3d at 900. In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review

5

using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Ladner*, 318 So.3d at 901.

## DISCUSSION

The interpretation of La. R.S. 9:2796, specifically the version applicable at the time the instant suit was filed, is central to the outcome of this appeal. For guidance, we turn to *Medine v. Geico General Ins. Co.*, 97-2393, 97-2775, 97-2778 (La. App. 4 Cir. 11/17/99), 748 So.2d 532, <u>writ denied</u>, 99-3556 (La. 2/11/00)[3], 754 So.2d 945, which involved a vehicle accident related to a Mardi Gras parade. The facts of *Medine* set forth that the king of the Krewe of Zulu decided to detour from the established parade route in order to reach the celebration at the Zulu headquarters. During the detour, the brakes of the fire truck operated by the king failed. The king lost control of the fire truck and struck a curb. A passenger fell from the fire truck, and the truck collided with other vehicles before coming to a stop. After being sued, the Krewe of Zulu claimed immunity under La. R.S. 9:2796, and the trial court granted the motion on those grounds. *Medine*, 748 So.2d at 534-35.

On appeal, the Fourth Circuit stated:

> The rules of statutory interpretation provide that a law must be applied as written if it is clear and unambiguous and its application does not lead to absurd consequences; with regard to such laws, no further interpretation may be made in search of the intent of the legislature. [La. C.C. art. 9]. Statutes, such as [La. R.S. 9:2796], that grant immunities or advantages to special classes in derogation of the general rights available to tort victims, must be strictly construed against the party claiming the immunity or advantage. (Citations omitted.)
>
> Were [La. R.S. 9:2796] applied as written, covered krewes and organizations would be shielded from **all** liability for **all** damages or injury that is caused by any of their members unless those actions were wanton, deliberate or grossly negligent. The consequence of a literal application of 9:2796 would be to grant blanket immunity to covered organizations and their members for their negligence. This is

---

[3] The version of La. R.S. 9:2796 involved with *Medine* did not contain the exception to the grant of immunity for loss or damage caused when members of the krewe or organization are operating a motor vehicle within a parade.

6

patently absurd. We, therefore, must attempt to discern the legislature's true intent in enacting this statute. (Emphasis in original)

*Medine*, 748 So.2d at 535.

The *Medine* court then reviewed the minutes of the House Civil Law Committee, in which Mr. Blaine Kern, as representative of several Mardi Gras krewes, explained the bill that later became La. R.S. 9:2796. The statute was enacted in 1979 to address the problem of rising insurance costs for Mardi Gras krewes. *Medine*, 748 So.2d at 535. The statute was amended in 1987 to include subpart B, which stated that a person who attends an organized Mardi Gras parade assumes the risk of being stuck by a missile traditionally thrown or tossed by members of a krewe during the parade. The appellate court found that the amendment was "consistent with an intent to limit the liability of covered entities for damages incurred *in connection with traditional parade activities.*" *Medine*, 748 So.2d 536 (Emphasis added). We find the expansive language in La. R.S. 9:2796(A) was intended to cover a broad spectrum of risks and losses associated with traditional parade activities and will therefore apply *Medine's* interpretation of La. R.S. 9:2796 to the facts of the instant case.[4] See *Binkley v. Landry*, 2000-1710 (La. App. 1 Cir. 9/28/01), 811 So.2d 18, 22, writ denied, 2001-2934 (La. 3/8/02), 811 So.2d 887; see also *Foshee v. Louisiana Farm Bureau Cas. Ins. Co.*, 41,842 (La. App. 2 Cir. 1/31/07), 948 So.2d 1171, 1177, writ denied, 2007-0483 (La. 4/20/07), 954 So.2d 169.

In the instant case, several depositions and affidavits were submitted in support of the defendants' motion for summary judgment. Charlotta Herques, who was queen of Hyacinthians in 2018, testified that the procession to the staging area

---

[4] While we agree with *Medine's* interpretation of La. R.S. 9:2796, that case is factually distinguishable from the instant case. In *Medine*, a member of the Krewe of Zulu deliberately diverged from the established parade route and injured people who were not parade spectators and were not in the vicinity of the parade route. As such, the *Medine* court correctly found La. R.S. 9:2796 to be inapplicable and reversed the trial court. *Medine*, 748 So.2d at 536. In the instant case, Mr. Porche was ostensibly a willing participant in the Hyacinthians parade, and was involved in a procession of the royal court toward the parade's starting point.

was a planned and carefully organized event, although she herself did not have much participation in its organization. Mrs. Herques stated that the extent of her participation in the planning of the procession was requesting convertibles for the maids and dukes, but she did not secure the convertibles herself. She also stated the Shriner escort for the procession was secured by her husband, Anthony Herques, who was king of Hyacinthians, but she contacted the Shriners to also participate in the parade. The royal court had an itinerary where the courtiers had breakfast together from 8:00 to 10:00, after which the courtiers headed to the civic center, where they would get dressed for the parade. The royal court was scheduled to leave the civic center at 10:30 and arrive at the parade staging area at 11:00. Besides the royal court, the scroll bearers, the captains, and Mr. Hebert also rode in the procession. She was not aware of a bus being a part of the procession at that time. Mrs. Herques also testified that she was not aware that Aquarius was following Hyacinthians in the procession. She further testified that there is "typically" a procession to the parade staging area every year, and the king and queen of the krewe decide how that procession takes place. Mrs. Herques testified that it is the king and queen who are responsible for organizing the court's transportation from the civic center to the parade staging area. As for organizing the escort, Mrs. Herques testified that is the responsibility of the krewe captain.

Evette Detiveaux, vice-president of Hyacinthians in 2018, testified that she contacted the Shriners to secure their participation. Although she did not know who did it, she stated that someone lined up the king, queen, captain, pages, scroll bearers, and maids and arranged them in order at the civic center prior to the procession. Ms. Detiveaux testified the procession was not done "on a whim."

In contrast to Ms. Detiveaux's testimony, Mr. Herques stated that he contacted the Shriners for participation in the parade. He stated that at some time prior to the procession, he participated in a safety meeting with the Terrebonne

8

Parish Sheriff's Office, in which it was said that processions to staging areas had to be escorted, that all participants must remain in line, and that no one could leave the procession until it reached the staging area. Mr. Herques also testified that the Shriners were in charge of lining up the procession and keeping the participants in order. Mr. Herques was unaware that there was a bus in the procession until after the accident occurred.

Mr. Porche confirmed that the Shriners, including himself, were contracted by Hyacinthians to escort the procession. The Shriners instructed the participants on the route they would take, to stay close together, and to not let anyone not associated with the procession enter the line. Mr. Porche confirmed that aside from the royal court, the procession also consisted of Mr. Hebert, who was driving his personal vehicle. The Shriner escorts regulated the speed of the procession to stay between 15 and 20 miles per hour. Mr. Porche recalled that when the procession started, there was a bus driven by Mr. Charpentier directly behind Mr. Hebert, but that at some point another vehicle, purportedly Mr. Naquin's, got in between Mr. Hebert and Mr. Charpentier.

Alvin Dupre, captain of the Shriner motorcycle unit, testified that he was told by Mr. Hebert, who was the "guy that's in charge" of Hyacinthians, that the escort was working on behalf of Hyacinthians. There were a total of seven Shriner motorcycle escorts riding with the procession. Mr. Hebert participated in the procession by driving in an SUV. Mr. Dupre reiterated that no one in the procession was allowed to leave the line prior to reaching the staging area.

Mr. Hebert testified that he is a paid agent who worked for Hyacinthians in 2018 and had no affiliation with any other krewe. He stated that normally in the procession, the king and queen are at the front in a limousine, followed by the captains and maids, and that he is always at the end of the procession. Although at the end of the procession, Mr. Hebert confirmed that he is still part of the

9

procession. He recalled a school bus that had been converted into a "party bus" was driving immediately behind him, but that it was not part of the Hyacinthians procession. At some point during the procession, another vehicle, purportedly driven by Mr. Naquin, entered the procession between Mr. Hebert and the bus.

In an affidavit by Lani Detiveaux, a member of the Delightful Divas float group, which participated in the 2018 Hyacinthians parade, she stated that the bus Mr. Hebert was owned by Sherman Charpentier and was hired by the Delightful Divas to transport the group to the parade staging area. The bus was paid for through the Delightful Divas float group's bank account. Ms. Detiveaux stated that the bus "was not intended to be and was not actually a part of the [Hyacinthians] procession ... but the party bus did follow the ... procession from the [c]ivic [c]enter to the [parade staging area]."

Darrell Charpentier testified that the bus that he drove in the procession was owned by his brother. He was unsure as to whether a member of Hyacinthians or Aquarius had hired the bus. Mr. Charpentier stated he arrived late to the civic center and received a safety briefing from Mr. Dupre. Mr. Charpentier stated he was approached by a man driving an SUV who said he would be driving immediately in front of Mr. Charpentier. Mr. Charpentier confirmed that he was located immediately after Hyacinthians in the procession. Mr. Charpentier also stated that there was "no doubt" that a procession was going down Hwy. 24 toward the parade staging area. Mr. Charpentier also stated that at some point in the procession, a gap was created by Mr. Hebert speeding up, and a black truck, purportedly driven by Mr. Naquin, got between Mr. Hebert and Mr. Charpentier.

Hyacinthians concedes that the procession was an event related to the parade, and the record corroborates that there was a high level of preparation and organization put into the procession to transport the royal court to the parade staging area in preparation for the parade. The king and queen took part in

securing vehicles and escorts for the procession. An itinerary was made, outlining when the procession would leave the civic center to reach the parade staging area on time. The Shriners organized the procession and gave each participant specific instructions to stay in line, stay close to each other, and prevent non-participants from entering the procession. The procession traveled at a regulated speed directly to the staging area. The Hyacinthians portion of the procession consisted of the king and queen riding in front, all the dukes, maids, and other royalty following, and Mr. Hebert, a paid employee of Hyacinthians, riding at the end. Mr. Charpentier followed Mr. Hebert, and Aquarius followed Mr. Charpentier. The bus driven by Mr. Charpentier, which was a part of the procession, was hired by the Delightful Divas float group to transport them to the staging area. Although the Delightful Divas float group participated in the Hyacinthians parade, the bus was not paid for or secured by Hyacinthians, and Mr. Charpentier was not a paid employee of Hyacinthians.

It was alleged in the Porche's first supplemental petition, and admitted in Hyacinthians' answer, that Hyacinthians is a domestic organization authorized to do business in the State of Louisiana. It is also undisputed that the Hyacinthians parade was scheduled for and did roll on February 4, 2018. Louisiana Revised Statutes 9:2796, at the time of the accident, provided a limitation to liability for Mardi Gras krewes for damage and injury they cause during events in "conjunction with or related to the parades." In the instant appeal, Hyacinthians is the defendant, and as such, would be shielded from liability for Mr. Porche's injury, which occurred at the organized procession in connection with traditional parade activities. See Medine, 748 So.2d at 535-36.

Furthermore, the accident occurred between Mr. Hebert's position at the end of Hyacinthians and Mr. Charpentier's position before Aquarius. The protection of La. R.S. 9:2796 does not extend to compensated employees of Mardi Gras krewes,

11

only voluntary, non-compensated members. See *Foshee*, 948 So.2d at 1177. Any liability on the part of Mr. Hebert would not be covered. However, Mr. Hebert, who worked for Hyacinthians but was not a krewe member, was not made a defendant in the instant lawsuit and is not a party in the instant appeal. Mr. Charpentier, who is a defendant in the instant lawsuit but not a party in the instant appeal, is not a compensated employee of Hyacinthians. As such, the trial court was correct in finding that there was no issue of material fact that Hyacinthians was shielded from liability for Mr. Porche's injury, which occurred during an event in conjunction with its Mardi Gras parade.[5]

## DECREE

The Thirty-Second Judicial District Court's August 8, 2021 granting of summary judgment in favor of the appellees, Ladies Carnival Club, Inc. d/b/a Krewe of Hyacinthians and Certain Underwriters at Lloyd's, London, is affirmed, and the claims by the appellants, Terry and Naomi Porche, against the appellees are dismissed with prejudice. All costs of the instant appeal are assessed to the appellants.

**AFFIRMED.**

---

[5] No allegations of any "deliberate and wanton act or gross negligence" were made against the defendants; therefore, pretermit discussion of that issue in the instant appeal.